UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCIA ZAMORANO, M.D.,

        Plaintiff,

v.

WAYNE STATE UNIVERSITY, et al,

        Defendants.

_____/

Case No. 07-12943

Victoria A. Roberts
U.S. District Judge

Michael Hluchaniuk
U.S. Magistrate Judge

## ORDER DENYING MOTION TO QUASH

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint in state court alleging various state law causes of

action and federal constitutional violations under 42 U.S.C. § 1983.  (Dkt. # 10).

Defendants removed this matter to federal court on the basis of federal question

jurisdiction and supplemental jurisdiction.  (Dkt. # 1).  As part of the discovery

process, defendants served subpoenas on various hospitals and medical institutions,

demanding access to application and peer review materials pertaining to plaintiff.

Plaintiff filed a motion to quash these subpoenas on December 21, 2007, asserting

that the materials sought were privileged under Michigan's peer review statute and

disclosure was, therefore, prohibited.  (Dkt. # 27).

Defendants filed a response to plaintiff's motion, asserting that the Michigan peer review statute is inapplicable to the instant proceeding and alternatively, that there is no federal peer review privilege. (Dkt. # 33). Plaintiff filed a reply in support of her motion to quash on January 17, 2008. (Dkt. # 35). On March 3, 2008, pursuant to 28 U.S.C. § 636(b)(1)(A), District Judge Victoria A. Roberts referred plaintiff's motion to quash to Magistrate Judge Mona K. Majzoub, who was originally assigned to this matter. (Dkt. # 45). Magistrate Judge Majzoub recused herself and this matter was reassigned to the undersigned. (Dkt. # 47). One of the entities subpoenaed by defendants, the Detroit Medical Center (DMC), filed a response to plaintiff's motion to quash on April 7, 2008. (Dkt. # 57). Defendants moved for and were granted permission to file a sur-reply brief, primarily in order to address the issues raised by the DMC. (Dkt. # 58, 59, 60). The Court held a hearing on plaintiff's motion to quash on April 14, 2008. (Dkt. # 61, Hrg. Tr.).

## II.  BACKGROUND ALLEGATIONS AND CLAIMS

Plaintiff's Amended Complaint explains that she was an Associate Clinical Professor at Wayne State University Medical School (WSU), and was governed by a collective bargaining agreement that sets forth a process for termination and prohibits discrimination based on sexual orientation, among other things. Plaintiff

alleges that the head of the neurosurgery department, who disapproved of her "masculine aggressive style" and sexual orientation, had always been at odds with her, which ultimately resulted in his discriminatory actions against her. (Dkt. # 10).

In connection with a grant that plaintiff obtained through the Michigan Economic Development Corporation (MEDC), she received a procurement card, commonly called a "P-Card," which she could use for expenses relating to her grant research. There were allegations that plaintiff and her domestic partner had inappropriately used the P-Card for personal expenses and that this was used as a pre-text for her termination. Plaintiff admits that her management of the use of the P-Card was "sloppy," but states that there was never any attempt to defraud WSU, who had accepted her reimbursement of improper charges in the past. Plaintiff claims that, rather than reveal her domestic partner relationship when questioned about some of the charges made by her partner without her knowledge, plaintiff indicated that they were for "workstations" for her research, but stated that she would purchase them herself and reimburse the university. Plaintiff maintains that she was simply trying to keep her personal life private, while defendants say she lied. (Dkt. # 10).

During the audit and investigation of her P-Card usage, plaintiff claims that she repeatedly offered to reimburse WSU for questionable charges, which is

allowed under the P-Card agreement, but defendants refused in order to continue with the "pretext." WSU filed a civil suit against her for reimbursement of the charges, which ultimately settled. (Dkt. # 10).

In furtherance of the "pretext" and "conspiracy" against her, plaintiff claims that WSU police surveilled her home in order to build a false criminal fraud case against her, which was ultimately brought to the Detroit Police Department and the Wayne County prosecutor. Plaintiff alleges that defendants' false statements were used to obtain a search warrant of her home, to look for items she had allegedly embezzled. Defendants allegedly conspired to provide false information to the MEDC, to interfere with her grant. Plaintiff's claims that her employment was terminated without due process and in violation of the CBA. Defendants then issued a press release stating that plaintiff attempted to defraud WSU. According to plaintiff, the Wayne County prosecutor declined to prosecute and issued a press release stating that there was no basis for a criminal action, citing an "impossibility" to prove intent to defraud. (Dkt. # 10).

Plaintiff filed a grievance against WSU and a grievance arbitration was held. The arbitrator decided in plaintiff's favor, concluding that her due process rights were violated and awarded damages under the CBA. According to plaintiff, defendants have refused to implement the arbitration award. Plaintiff says this

lawsuit is about defendants' alleged campaign of harassment and interference with

her business opportunities, including her new affiliations and practice

appointments, as these issues were outside the arbitrator's authority.  (Dkt. # 10).

## III.   PARTIES' ARGUMENTS ON PEER REVIEW PRIVILEGE

Defendants issued subpoenas to various medical facilities seeking, among

other things, medical peer review information[1] about plaintiff.  Plaintiff moved to

quash the subpoenas based on the Michigan peer review statute,[2] which, if

---

[1] The record is unclear about the scope of the "peer review information" that may be included in the records maintained by the various facilities.  Such materials could include documents relating to: (1) the "retrospective review for purposes of improvement and self-analysis"; (2) prospective issues addressed by the credentials committee regarding whether to extend staff privileges; (3) the review of current patient care; (4) the review of professional practices of licensees and the granting of staff privileges consistent with a licensee's qualifications; (5) incident reports for occurrences at the hospital where the purpose is to assist the hospital in monitoring its own activities to reduce accidents, injuries, morbidity and mortality. *See e.g., Dye v. St. John Hosp. and Medical Center*, 230 Mich.App. 661, 584 N.W.2d 747 (1998); *Gallagher v. Detroit-Macomb Hosp. Ass'n*, 171 Mich.App. 761, 431 N.W.2d 90 (1988).

[2] M.C.L. § 333.20175(8) provides that "[t]he records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena."  Similarly, M.C.L. § 333.21515 provides that "[t]he records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena."

applicable, unquestionably bars production of most of the information at issue. Plaintiff claims that, because this matter does not involve any claims relating to her professional competence and only involves the circumstances of her termination, the peer review materials are unrelated to her federal claims or any of defendants' defenses thereto.  Thus, plaintiff contends that the peer review materials could only relate to her state law claims and under *Stringfellow v. Oakwood Hospital*, Case No. 03-75118 (10/21/05), production is barred based on the Michigan statutory privilege.  In the alternative, plaintiff suggests that this Court should recognize a federal peer review privilege, relying primarily on *Hadix v. Caruso*, 2006 W.L. 2925270 (W.D. Mich. 2006).  (Dkt. # 17).

Defendants respond that plaintiff has no standing to claim privilege and therefore cannot object to the subpoenas, that there is no federal peer review privilege, and that this Court should strike certain damage claims by plaintiff if defendants are unable to access the documents requested.  (Dkt. # 33).  Defendants argue that privileges are generally not favored in the federal courts and that there is no recognized privilege against disclosure of medical peer review records under federal law.  *Id.* (citing, *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996); *Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir. 2007)).  Plaintiff claims that defendant, Dr. Guthikonda, made statements to third parties causing the third parties to deny

or restrict her privileges. Defendants argue that, therefore, they are entitled to discover information necessary to refute those allegations – information that would only be contained in the documents plaintiff seeks to suppress. In addition, defendants argue, plaintiff claims millions of dollars in damages related to her inability to practice at certain institutions or the curtailment of her privileges at those institutions. Defendants believe that the peer review documents requested by subpoena would provide substantial evidence that factors relating to plaintiff's qualifications and practice skills were the proximate cause of such damages.

Defendants distinguish *Hadix* on the basis that the facts (a federal prisoner's civil rights claim with allegations of inadequate medical care) have no similarity to the issues in this case and because the claims at issue in *Hadix* were essentially "the federal equivalent of state medical malpractice suits." *Hadix* at \*2. According to defendants, none of the factors that were critical to the court's decision in *Hadix* apply in this case.[3]

---

[3] The *Hadix* court's stated policy concern was protecting the records to facilitate "the interest of the medical profession, acting to serve society, to eliminate incompetent physician practices by a peer review of physician performance." *Hadix* at \*2. The court also noted the broad federal precedent refusing, from the Supreme Court on down, to adopt a federal privilege in either the academic or medical peer review settings. The court went on to note how problematic applying such a privilege would be in a non-medical malpractice case such as the instant matter, where claims of employment discrimination and wrongful discharge are being made and where job qualifications and performance

In reply, plaintiff narrowed her objection to the documents requested to (1) "Medical Affairs" files[4]; and (2) documents pertaining to complaints made about her from 1991 to present, peer review files, morbidity/mortality conference review records,[5] complaints about her competence and billing practices. (Dkt. # 35). Plaintiff's counsel also made it clear at the hearing that she does not object to the production of any credentialing information or any information relating to why plaintiff was or was not granted privileges at a particular hospital, conceding that such information was relevant to her damages claim. (Dkt. # 61, Hrg. Tr., pp. 28-29). Rather, the only category of documents to which she continues to object is the "peer review information and the mortality and morbidity information." *Id.* at 32. Finally, plaintiff argues that she has standing to assert a privilege because there is no limitation in the Michigan peer review statute about who may enforce the privilege, whereas the cases cited by defendants involve different statutes where only the hospitals have the right of enforcement. (Dkt. # 35).

---

are at the heart of the claims with respect to both liability and damages. *Hadix*, at *2 (citing, *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 289 (4th Cir. 2001)).

[4] It is unclear from the record what specific information is contained in "Medical Affairs" files.

[5] Generally, these are evaluations of alleged physician-caused deaths. *See, e.g., Nilavar v. Mercy Health System-Western Ohio*, 210 F.R.D. 597, 604 (S.D. Ohio 2002).

In their sur-reply, defendants argue that the court should order the non-party recipients of the subpoenas to produce the documents with respect to which plaintiff has withdrawn her objections. Defendants also argue that federal law applies to all privilege claims as mandated in *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992) and that federal law does not recognize any peer review privilege. (Dkt. # 60).

## IV. DISCUSSION

### A. The Information Sought by Defendants Falls Within the Scope of Discovery Set Forth in the Federal Rules of Civil Procedure.

It is well-established that "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). Plaintiff attempts to parse the information requested by defendants so finely such that it somehow becomes "irrelevant" and thus undiscoverable. Plaintiff's arguments in this regard contravene the broad scope of discovery found in Fed.R.Civ.P. 26(b). *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably

calculated to lead to the discovery of admissible evidence." *Id.* (quoting, *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)).

Further, "[w]hether evidence is highly relevant or just a little relevant, it is relevant nonetheless." *Nilavar v. Mercy Health System-Western Ohio*, 210 F.R.D. 597, 608-609 (S.D. Ohio 2002). Indeed, whether peer review information "stands at the center of a controversy or to its side, as long as the information is relevant to [the] claim, it is discoverable, and the importance of fostering the free flow of information, which is the linchpin of fairness and truth in the judicial process, is paramount." *Id*. at 609. Thus, under the broad scope of discovery permitted under the federal rules, defendants have made a sufficient showing that the information sought is relevant to plaintiff's damage claims, or is likely to lead to the discovery of admissible evidence.[6]

B.    The Federal Law of Privilege Governs All Claims In This Matter.

Having determined that the information sought by defendants falls within the scope of discovery, the next issue before the Court is whether the state law of

---

[6] This Court, of course, makes no determination regarding the admissibility of any of the evidence sought by defendants, or the validity of any other objections that the non-parties may have, including undue burden. Additionally, given that the specific nature and contents of these materials have not been established (none of the attorneys at the April 14, 2008 hearing could describe the materials with any particularity), there may be relevancy objections to individual records or documents that are well-founded.

privilege or the federal law of privilege is controlling.  In *Jenkins v. DeKalb Co.*,

242 F.R.D. 652, 655 (N.D. Ga. 2007) (emphasis added) the Court neatly set up the

issue at hand:

> The Federal Rules of Civil Procedure authorizes parties
> to "obtain discovery regarding any matter, not privileged,
> that is relevant to the claim or defense of any party...."
> Fed.R.Civ.P. 26(b)(1).  Federal Rule of Evidence 501
> provides that "[t]he privilege of a witness ... shall be
> governed by the principles of the common law as they
> may be interpreted by the courts of the United States in
> light of reason and experience."  Fed.R.Evid. 501. "[T]he
> federal law of privilege provides the rule of decision in a
> civil proceeding where the court's jurisdiction is
> premised upon a federal question, even if the
> witness-testimony is relevant to a pendent state law count
> which may be controlled by a contrary state law of
> privilege." *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th
> Cir. 1992).  **Thus, even in a case such as this, where the
> Plaintiffs are alleging violations of state law in
> addition to violations of federal law, federal courts
> look to federal law to determine the applicable
> privileges**. This rule is driven by a respect for the
> precedents of other circuits, as well as the pragmatic
> concern that "it would be impractical to apply two
> different rules of privilege to the same evidence ..."

As such, most federal courts follow the rule that, if even one claim is federal, then

the federal rule of privilege applies, although state law may supply the rule of

decision with respect to other claims in the case.

The Sixth Circuit has not squarely addressed the issue of whether a state law medical peer review privilege should apply where there are both state and federal claims at issue. However, in *Hancock v. Dodson*, 958 F.2d at 1373 (emphasis added, internal citations omitted), the Sixth Circuit provided substantial guidance on the overarching issue, holding that, in a federal question case with pendent state claims, it was required to apply the federal law of privilege, not state law:

> In *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D. Cal. 1978) the court held that "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation." *Id*. at 459. This approach appeared to be most consistent with the congressional policy that "in nondiversity jurisdiction civil cases, federal privilege law will generally apply." *Id*. * * * The court concluded that this policy should not be "cast aside simply because pendent state claims are raised in what is primarily a federal question case." *Id*. * * * **Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege.**

Thus, the Sixth Circuit applies the federal law of privilege to cases where there are both state and federal claims and where the court's jurisdiction is based on a federal question.[7]  *Cf. Soehnlen v. Aultman Hospital*, 2007 W.L. 1342508 (N.D.

---

[7]  Although not cited by the parties, this Court long ago decided that the Michigan peer review statute did not bar the production of peer review materials

Ohio 2007) (The choice of law favoring the application of federal law on privilege to the supplemental state claims from *Hancock v. Dodson* does not apply to a case with federal and state law claims that was removed on the basis of diversity jurisdiction.). Just as in *Hancock*, the instant matter is before a federal court by virtue of plaintiff's § 1983 claim. (Dkt. # 1). This Court can find no principled basis to distinguish this case from *Hancock* and, therefore, federal privilege law is applicable to all claims.[8] Plaintiff's argument that her state claims should be

_____

using an analysis consistent with *Hancock v. Dodson*. In *Dorsten v. Lapeer County General Hospital*, 88 F.R.D. 583, 586 (D.C. Mich. 1980), District Judge Newblatt concluded that, "despite the existence of the state statutory privilege, in cases arising under federal law there is no constitutional inhibition to abrogation of state created privileges either in connection with the admission of evidence or in connection with pretrial discovery." He further held that the "presence of pendent state claims does not bar access and that the determination with respect to the federal claim will control discovery for the entire action." *Id.* Thus, Judge Newblatt ordered the medical peer review materials to be produced, subject to an appropriate protective order. *Id.*

[8] As briefed and argued at length by the parties, this issue was recently examined in *Moses v. Providence Hospital*, 2007 W.L. 1806376 (E.D. Mich. 2007) and *Stringfellow, supra*, which concluded that, when applying the federal rules of discovery and privilege in a matter involving mixed state and federal claims, a determination of relevance of the disputed materials should be made. In these cases, the plaintiffs argued that they only sought the peer review records for the federal claim, not the state law claims, and therefore, they should not be protected by the privilege. The court determined that to make the documents "relevant" to the federal claim would essentially turn the federal statute at issue into a federal medical malpractice statute, which was not supported by its legislative history or case law interpreting the statute. In both *Stringfellow* and *Moses* the plaintiff sought the peer review materials and agreed not to use them for the state law

severed from her federal claims and that the privilege selectively applied is rejected

pursuant to the reasoning of *Hancock v. Dodson*.

C.    No Peer Review Privilege Exists Under Federal Common Law.

The second issue before the Court is whether the federal common law,

through Rule of Evidence 501, recognizes a peer review privilege. Notably, every

federal court of appeals that has addressed the issue for purposes of federal

common law has determined that there is no "federal" peer review privilege.

*Jenkins*, 242 F.R.D. at 659. Plaintiff insists that, under *Jaffee*, *supra*, such an

inquiry must be made on a "case-by-case" basis and thus, decisions made by other

courts regarding the medical peer review privilege are neither controlling nor

necessarily persuasive. Defendants argue, on the other hand, that no federal circuit

court has recognized a federal peer review privilege and the only district courts to

do so expressly recognized the privilege in the context of federal claims that were

the "equivalent" of a malpractice claim. *See*, *Hadix*, *Stringfellow*, and *Moses*,

*supra*. According to defendants, because this matter essentially involves

---

claims. The court determined that they were not relevant to the federal claims and
denied the plaintiff access to the materials for discovery on relevancy grounds.
Further, the court did not address the *Hancock* decision in its analysis. For this
reason, the undersigned does not find these cases, like *Hadix*, to be particularly
persuasive.

employment and discrimination issues, rather than medical malpractice issues,

these cases are inapplicable and unpersuasive.

The Court disagrees with plaintiff's assertion that *Jaffee* mandates a "case-

by-case" evaluation regarding whether federal common law recognizes a privilege

in the sense that this issue should be independently evaluated in each new case

filed in federal court.  In *Jaffee*, the Supreme Court quoted a 1975 Senate Report

accompanying the adoption of Rule 501, which stated in part that the rule "should

be understood as reflecting the view that the recognition of a privilege based on a

confidential relationship...should be determined on a case-by-case basis."  *Jaffee*,

518 U.S. at 8.  The full context of this statement in the Senate Report reveals that

plaintiff's interpretation is incorrect:

> Two other comments on the privilege rule should be
> made. The committee has received a considerable volume
> of correspondence from psychiatric organizations and
> psychiatrists concerning the deletion of rule 504 of the
> rule submitted by the Supreme Court. **It should be
> clearly understood that, in approving this general rule
> as to privileges, the action of Congress should not be
> understood as disapproving any recognition of a
> psychiatrist-patient, or husband-wife, or any other of
> the enumerated privileges contained in the Supreme
> Court rules.  Rather, our action should be understood
> as reflecting the view that the recognition of a
> privilege based on a confidential relationship and
> other privileges should be determined on a
> case-by-case basis**.

S. Rep. No. 93-1277, p. 13 (1974), U.S. Code Cong. & Admin. News 1974, pp.

7051, 7059 (emphasis added).  A review of the Senate Report, on which the

Supreme Court relied in *Jaffee*, clearly shows that it was intended to mean on a

privilege-by-privilege basis, and not a litigation-by-litigation basis.

Further, the Supreme Court in *Jaffee* also makes this concept clear elsewhere

in its decision:

> We reject the balancing component of the privilege
> implemented by that court and a small number of States.
> Making the promise of confidentiality contingent upon a
> trial judge's later evaluation of the relative importance of
> the patient's interest in privacy and the evidentiary need
> for disclosure would eviscerate the effectiveness of the
> privilege. As we explained in *Upjohn*, if the purpose of
> the privilege is to be served, the participants in the
> confidential conversation 'must be able to predict with
> some degree of certainty whether particular discussions
> will be protected. **An uncertain privilege, or one which
> purports to be certain but results in widely varying
> applications by the courts, is little better than no
> privilege at all.'**

*Jaffee*, 518 U.S. at 18 (quoting, *Upjohn Co. v. United States*, 449 U.S. 383, 389

(1981), emphasis added).  In other words, as succinctly put by the Chief Judge of

the Southern District of Ohio, a "privilege should either be recognized in the

common law, or it should not.  Its application should not turn on whether, for

example, the claim, which appears later in time to the occurrence of the so-called

confidential communication, is one arising under malpractice law, discrimination law, or antitrust law." *Nilavar*, 210 F.R.D. at 606; *see also, Syposs v. United States*, 63 F.Supp.2d 301, 304 (W.D.N.Y. 1999) ("Privileges usually do not vary depending upon the nature of their action as their very purpose is to bar compelled disclosure irrespective of the nature of the proceeding in connection with which they may arise."). The Court agrees and, therefore, rejects the "case-by-case" analysis as offered by plaintiff, as well as the suggestion that the existence of a privilege could vary depending on the type of claim at issue.

The Court concludes that, based on the federal cases referenced above and the framework set forth in *Jaffee*, the medical peer review privilege is not recognized under the federal common law. While it is true that, in *Jaffee*, the Supreme Court acknowledged the significance of all 50 states and the District of Columbia having recognized a privilege, several other factors must be weighed in making this determination, as thoroughly and persuasively articulated by Judge Rice in *Nilavar, supra*.

Judge Rice first noted that the issue presented was actually fairly narrow given that the Supreme Court had already rejected an academic peer privilege as a matter of federal common law in *University of Pa. v. E.E.O.C.*, 493 U.S. 182 (1990). While acknowledging that the medical peer review privilege and the

academic peer review privilege are not the same, Judge Rice concluded that *University of Pa.* still provided persuasive authority against finding a federal medical peer review privilege. *Id.* at 601. Judge Rice next noted that the Sixth Circuit has not found a peer review privilege to exist and this, combined with the *University of Pa.* decision, was probably sufficient to reject the peer review privilege.[9] He went on to analyze the various federal cases purportedly supporting the existence of the privilege to determine if they provided a sufficient persuasive basis to conclude that a peer review privilege exists under federal common law. *Nilavar*, 210 F.R.D. at 601-602.

Judge Rice rejected cases finding a privilege where there was a federal claim "equivalent" to a malpractice claim as too factually dissimilar to be applicable. He also rejected cases applying the state law privilege only to supplemental state law claims as inconsistent with *Hancock v. Dodson*. Judge Rice rejected the notion that Heath Care Quality Improvement Act, 42 U.S.C. § 11101 *et. seq.*, created a broad federal peer review privilege, given that Congress had carefully crafted a very specific and narrow privilege, only applicable to peer review material submitted to the Secretary of Health of Human Services. *Nilavar*, 210 F.R.D. at

---

[9] *Nilavar* was published in 2001. To date, the Sixth Circuit has still not specifically commented on whether the medical peer review privilege exists under the federal common law.

602.  Ultimately, Judge Rice held that the privilege did not exist based on the great weight of federal authority rejecting the existence of the medical peer review privilege along with the Supreme Court's conclusion in *University of Pa.* that an academic peer review privilege had no basis in the federal common law.  *Id.* at 604-605; *see also, U.S. v. Nixon*, 418 U.S. 683, 710 (1974) (privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth.").

Finally, Judge Rice examined whether anything in *Jaffee* could or should change his conclusion.  He concluded that the importance of protecting the confidentiality of medical peer review information did not "transcend[] the...predominant principle of utilizing all rational means for ascertaining the truth." *Id.* at 607 (quoting, *Jaffe*, 518 U.S. at 9).  And, while the state's interest in protecting medical peer review information should not be ignored, its importance in a "federal case fluctuates in direct correlation with the extent to which they are consistent with federal policies." *Id.*  Judge Rice concluded that the medical peer review privilege simply did not require the same type of absolute confidentiality as other privileges recognized under the federal common law:

> Without the comforting guarantee of absolute confidentiality, it is unlikely that, in the clergy-penitent context, many people of faith would seek penitence or

spiritual guidance; or that, in the attorney-client context, the truth in both civil and criminal matters would be anything more than an illusory ideal; or that, in the psychotherapist-patient context, emotionally distraught individuals would seek professional consultation for their illnesses. **Defendants have not convinced this Court that the need for confidentiality in the peer review process, as implicated in this particular case, rises to the highest level of importance as it does in those other contexts, or that the process will not function properly in the absence of a federal evidentiary privilege**. In the absence of any argument as to why these Defendants in particular, or others implicated by the peer review information at issue, will be harmed by the information's disclosure, the Court does not find that the purely rhetorical arguments on matters of comity and the importance of confidentiality in the peer review process overcome Plaintiff's "need for information sufficient to prove [his] allegations." * * * The numerous decisions from other federal courts rejecting the privilege, and the Sixth Circuit's expressed preference for not expanding the common law of privileges...reinforce this conclusion.

*Id*. at 608 (emphasis added, internal citations omitted). The Court agrees wholeheartedly with Judge Rice's analysis and conclusion. Simply, the truth-seeking function of the federal courts outweighs the importance of protecting peer review information. *Rdzanek v. Hospital Service District*, 2003 W.L. 22466232, *4 (E.D. La. 2003).

## V. CONCLUSION

For these reasons, the Court concludes that: (1) the information sought by defendants generally falls within the scope of discovery set forth in Rule 26; (2) the Michigan statutory peer review privilege is not applicable to this matter under Rule 501 and *Hancock v. Dodson* given that this Court's jurisdiction is based on a federal question pursuant to plaintiff's § 1983 claim; and (3) there is no medical peer review privilege under the federal common law. Thus, plaintiff's motion to quash is **DENIED**. The Court declines to give any further relief, in form of any order directed to non-party recipients of the subpoenas, as requested by defendants.[10] The only motion referred to the undersigned is plaintiff's motion to quash and thus, this Order is so limited. Nothing in this order precludes the parties or the subpoenaed entities from filing any motions for protective orders or seeking other appropriate relief. *See e.g., Rdzanek*, at *4; *Nilavar*, 210 F.R.D. at 610-611; *Dorsten*, 88 F.R.D. at 586.

---

[10] It is unclear whether and to what extent each of the non-party recipients of the subpoenas might assert the same or additional objections than those posed by plaintiff. Non-party DMC indicated to the Court that while it "maintains its objections to the production of any peer review materials," it "will abide by the court's decision regarding application of the privilege to the requested documents." (Dkt. # 57, p. 2). Counsel for non-party St. John's Hospital appeared at the hearing and indicated that it would adhere to any order issued by the Court, but would "object to any release of the records at this particular time." (Dkt. # 61, pp. 53-59).

**IT IS SO ORDERED.**

The parties to this action may object to and seek review of this Order, but are required to file any objections within 10 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  A party may not thereafter assign as error any defect in this Order to which timely objection was not made.  Fed.R.Civ.P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.


Date:  May 15, 2008                                    s/Michael Hluchaniuk
                                                       Michael Hluchaniuk
                                                       United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Elizabeth P. Hardy, Sonja L. Lengnick, Norman L. Lippitt, Stephen T. McKenney, Megan P. Norris, Robert Q. Romanelli, Patricia C. Schabath, Bryan L. Schefman, and Ian C. Simpson, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: not applicable.

s/Tammy M. Hallwood
Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
tammy_hallwood@mied.uscourts.gov