UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCIA ZAMORANO, M.D.,

    Plaintiff,

v.

WAYNE STATE UNIVERSITY, *et al*,

    Defendants.
_____/

Case No. 07-12943

Victoria A. Roberts
U.S. District Judge

Michael Hluchaniuk
U.S. Magistrate Judge

## ORDER GRANTING PETITIONER'S MOTION TO QUASH

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Plaintiff's complaint alleges, generally, that her employment with Wayne State University (WSU) and with University Neurological Surgeons (UNS) was wrongfully terminated because of her gender. The complaint makes related allegations against several individual defendants as well. Defendants have denied the allegations and the case is currently going through the relatively normal pretrial discovery process.

The present controversy centers on plaintiff's discovery subpoena to non-party POH Regional Medical Center (POH). The subpoena seeks "peer review" records for a number of doctors, some of whom apparently had hospital privileges

1

at POH. POH has objected to the production of such records, in the form of a motion to quash, based on a claim that the "peer review" records it has are not relevant to the litigation. (Dkt. 63). UNS and defendant Dr. Guthikonda have filed a concurrence to the motion to quash, as have WSU and the other individual defendants. (Dkt. 72, 73). Plaintiff filed a brief in opposition to the motion to quash (Dkt. 74) and defendants WSU and the individual defendants (except Dr. Guthikonda) filed a response to plaintiff's opposition. (Dkt. 78).

District Judge Victoria A. Roberts referred the motion to quash to the undersigned for hearing and determination pursuant to 28 U.S.C. 636(b)(1)(A). The Court heard oral argument on the motion to quash on July 10, 2008. With the permission of the Court, after the hearing, POH filed a second supplemental brief in support of its motion, WSU and individual defendants filed a supplemental brief, and plaintiff filed a supplemental brief in opposition. (Dkt. 83, 85, 87).

For the reasons set forth below, the undersigned **GRANTS** the motion to quash subpoena.

## II. DISCUSSION

### A. Standard of Review and Relevancy Standard for Discovery

It is well-established that "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir.

1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). All parties agree that in order for information to be relevant at the discovery stage, and thus discoverable, it must be relevant to "any party's claim or defense" and, while the information itself need not be admissible in an evidentiary sense, it must still be "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see also, Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998), quoting, *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970) ("The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." ).

B. <u>Relevancy in the Context of a Discrimination Claim</u>

During oral argument, plaintiff's counsel indicated that the scope of plaintiff's request was limited to "peer review" records.[1] Counsel articulated two

---

[1] During the hearing, counsel for POH characterized "peer review" records as including such items as a doctor's application for professional privileges to a hospital as well as the hospital's determination regarding that application. The application is reviewed by some number of other doctors at the hospital, the "peers" of the applicant, and their decision is based on the background of the doctor. "Peer review" information could also include morbidity and mortality reviews which, as described by counsel, are reviews of hospital procedure following the death of a patient (or other negative outcome), and serve the purpose of potentially modifying future procedures of the hospital where warranted. No objection was made to this characterization and it will serve as the model for the type of records that are the subject of this motion.

3

theories of relevance regarding these type of records. The first theory is that the records would show the qualifications of other doctors who were employed by WSU or UNS, which plaintiff contends is important to affirmatively prove that she was as qualified or more qualified than the doctors who were not terminated or were hired by WSU and UNS within relevant time periods. This information, according to plaintiff, is important to establish a *prima facie* case of discrimination as allowed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendants and non-party POH assert that the identified doctors are not sufficiently similarly situated to be a comparable group under the *McDonnell Douglas* standard and, therefore, the information in the "peer review" records is not relevant to plaintiff's claim.

*McDonnell Douglas* created a paradigm by which a discrimination case could be proved through indirect evidence of discrimination. In *McDonnell Douglas*, the plaintiff was not hired for a position for which he was qualified and claimed that the failure to be hired was a result of racial discrimination. *Id*. at 796. The Court held that one method of establishing a prima facie case of discrimination was for the plaintiff to show: (1) that he belonged to a racial minority; (2) that he was qualified for the job he had applied for; (3) that he was not hired despite his being qualified for the position; and (4) that the position

4

remained open and the employer continued to seek other applicants for the position. *Id.* at 802. If these facts are established, the burden then shifts to the employer to articulate some "legitimate, nondiscriminatory reason for the employee's rejection." *Id.* While *McDonnell Douglas* was a failure-to-hire case it is clear that the indirect method of proving discrimination was not limited to that fact pattern.[2]

The *McDonnell Douglas* paradigm has found application in age and gender discrimination cases with differing fact patterns. For example, in *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 568 N.W.2d 64 (1997), the court applied a modified *McDonnell Douglas* test in an age and gender discrimination case, requiring the plaintiffs to prove they were: (1) members of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct. *Id.* at 695. *See also, Hazle v. Ford Motor Co.*, 464 Mich. 456, 628 N.W.2d 515 (2001), *Lytle v. Malady,* 458 Mich. 153, 579 N.W.2d 906 (1998), and *Wilcoxon v. Minnesota Min. & Mfg. Co.*, 235 Mich.App.

---

[2] In a footnote related to the required proof for a prima facie case the Supreme Court stated that the "facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 902, n. 13.

347, 597 N.W.2d 250 (1999).

Defendants argue that the individuals named in the discovery subpoena are not similarly situated and, therefore, information about them is not relevant. Plaintiff contends that they are similarly situated, because they were employed by WSU and UNS in a comparable capacity to the plaintiff, and therefore, information about them is relevant to establishing whether they were treated differently for purposes of proving her prima facie discrimination case. Plaintiff has, correctly, pointed out that the similarly situated test is one where the comparison is made on the basis of *all relevant* aspects rather than trying to establish an "exact correlation with the employee receiving more favorable treatment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Questions regarding the degree of similarity are relevant to facts that the plaintiff must prove in this case and are questions which the trier of fact must determine at trial, or perhaps could be addressed in a motion for summary judgment, but are not properly considered at this stage of the proceedings. In that "similarity" issues are relevant to plaintiff's claim, facts related to the background of individuals employed by WSU or UNS in capacities similar to plaintiff's, during relevant periods of time, are within the scope of properly discoverable facts in this matter. Even if facts relating to the qualifications of this class of

individuals are not admissible, they could reasonably lead to admissible evidence and, therefore, come within the parameters of Rule 26(b)(1).

Were the issue before the Court limited to whether information regarding the qualifications of other neurosurgeons employed by WSU or UNS is relevant to this case, the motion to quash would be denied. However, the more precise question before the Court is whether "peer review" records maintained at POH (and presumably other medical facilities besides WSU and UNS) comes within the scope of Rule 26(b)(1). In order to meet her burden to show a prima facie case of discrimination, plaintiff will have to show, among other things, that WSU and UNS hired or retained male neurosurgeons that were less or equally qualified as she was while terminating her employment under circumstances that suggested an inference of discrimination. What is important in that regard are the decisions that were made by WSU and UNS. If discrimination is to be shown, it must be accomplished through proof of how WSU and UNS viewed the qualifications of individuals, outside of plaintiff's protected class, when those individuals were retained or hired by WSU and UNS. Decisions by individuals associated with other medical institutions relating to the qualifications of these identified neurosurgeons in conducting their separate "peer review" process are not relevant, even under the broad scope of Rule 26(b)(1), to plaintiff's claim of discrimination

by WSU or UNS.

While there may be some information regarding the background and experience of these other neurosurgeons in the POH "peer review" records, the information considered by other institutions would not show what information was considered by WSU or UNS in making their decisions regarding plaintiff or the "comparable" neurosurgeons and therefore the POH records have no bearing on the actions of WSU or UNS. The information relied on by WSU or UNS can be sought directly from them rather than from unrelated entities such as POH.

Not lost in this analysis is the sensitive nature of the information in "peer review" records. As the undersigned previously concluded, while clearly no federally recognized privilege stands in the way of obtaining this information, the shield of confidentiality that normally protects this information justifies greater caution for the Court in exercising its discretion regarding exposing the records to public scrutiny.

 C. <u>Relevancy Based on Reputation</u>

Plaintiff has advanced a second theory for the purpose of establishing the relevance of "peer review" records at POH. Plaintiff claims that the information contained in these "peer review" files is relevant to the reputation of these other neurosurgeons and their reputations have relevance to plaintiff's reputation. This

theory was raised at the time of the oral argument but was not developed in the pleadings filed by plaintiff. It appears that plaintiff's position is that she anticipates attacks on her reputation by defendants based on possible errors or omissions in her background and that she can blunt such attacks by showing that other neurosurgeons have similar errors or omissions in their backgrounds.

In order to evaluate this theory, it is necessary to examine the nature of reputation evidence. Some years ago the Supreme Court commented on the nature of reputation evidence and stated the following:

> The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental or moral traits; nor can he testify that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant possesses a good general or specific character. ... The witness is, however, allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.

[Michelson v. United States, 335 U.S. 469, 477 (1948)](). Reputation evidence is not, however, evidence of specific acts of a person or the personal opinion of a witness about another individual. Rather, it is a witness's perception, based on a proper foundation, of what others in the community feel about an individual. Assuming,

for purposes of this discussion, that plaintiff were to offer a witness to testify about her good reputation among neurosurgeons in the community in which she practices, it would be permissible to ask the witness, on cross-examination, about specific instances of conduct of which the witness may have knowledge. *See*, [Fed.R.Evid. 405(a)](). Additionally, it might be possible, on re-direct examination, to have the witness testify that any specific instance of an error or an omission would not impact the plaintiff's reputation because almost all neurosurgeons have similar instances of errors and omissions in their backgrounds. However, the specific error or omission of some other neurosurgeon would not be relevant to this reputation evidence regarding the plaintiff. Therefore, "peer review" records relating to any of the identified individual doctors at POH would not be admissible evidence as to plaintiff's reputation nor would these records reasonably lead to admissible evidence.

### III. CONCLUSION

Based on the foregoing, POH Regional Medical Center's motion to quash subpoena is **GRANTED**.

**IT IS SO ORDERED.**

The parties to this action may object to and seek review of this Order, but are required to file any objections within 10 days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). A party may not thereafter assign as error any defect in this Order to which timely objection was not made. Fed.R.Civ.P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Date: August 1, 2008  s/Michael Hluchaniuk
  Michael Hluchaniuk
  United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Richard J. Gianino, Elizabeth P. Hardy, Sonja L. Lengnick, Norman L. Lippitt, Stephen T. McKenney, John R. Monnich, Megan P. Norris, Robert Q. Romanelli, Patricia C. Schabath, Bryan L. Schefman, and Ian C. Simpson, and Joseph W. Uhl, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: not applicable.

  s/James P. Peltier
  Courtroom Deputy Clerk
  U.S. District Court
  600 Church Street
  Flint, MI 48502
  (810) 341-7850
  pete_peltier@mied.uscourts.gov