**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**LUCIA ZAMORANO, M.D.,**

           Plaintiff(s),         CASE NUMBER: 07-12943
                                         HONORABLE VICTORIA A. ROBERTS

v.

**WAYNE STATE UNIVERSITY,**
a Michigan Educational Institution,
by the Wayne State University Board
of Governors, its statutory governing body;
**MURALI GUTHIKONDA, M.D.; LOUIS LESSEM;
JOHN OLIVER; CAROLYN HAFNER;
CHRISTINA RADCLIFFE; ROBERT FRANK;
MICHAEL HERBERT;** and
**UNIVERSITY NEUROLOGICAL SURGEONS,**

           Defendant(s).
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff Lucia Zamorano, M.D.'s ("Dr. Zamorano") "Motion to Compel Defendant's Answers to Deposition Questions Under Rule 37(a)(3)(B)(i)." (Doc. #70). Dr. Zamorano asks the Court to compel answers to ten deposition questions regarding: (1) the identity of the individuals involved in the decisions to terminate and suspend her; and (2) the decision-making process that led to her suspension and termination.

Dr. Zamorano also asks for the fees and costs associated with bringing this motion and for re-deposing Christina Radcliffe ("Ms. Radcliffe"), John Oliver ("Dr.

1

Oliver"), Louis Lessem ("Mr. Lessem"), and John Davis ("Mr. Davis").

Oral argument was heard on August 20, 2008.

Dr. Zamorano's motion is **GRANTED IN PART AND DENIED IN PART**.

## II.     FACTS AND PROCEDURAL HISTORY

Dr. Zamorano was a faculty member in the Department of Neurosurgery at Wayne State University ("WSU") who earned a grant for WSU's benefit from the Michigan Economic Development Corporation. WSU issued Dr. Zamorano a procurement card that allowed her to purchase goods for the grant.

In 2003, WSU discovered unauthorized charges on her procurement card and began an internal investigation. Three meetings were held as part of the on-going investigation. One meeting occurred in October 2004 with: (1) Mr. Lessem, Vice President and General Counsel of WSU; (2) Bill King ("Mr. King"), Director of Public Safety; (3) Bhavna Mehta, a member of the Internal Audit Department; (4) Nancy Barrett, the Provost of the University; (5) Michael Herbert ("Mr. Herbert"), Assistant Dean for Administration and Finance of the School of Medicine; (6) Carolyn Hafner ("Ms. Hafner"), Director of the Internal Audit Department; (7) Mr. Davis, WSU's Vice President for Facilities and Finance and Treasurer; and (8) Dr. Oliver, Vice President of Research.

As a result of that meeting, Mr. Herbert suspended Dr. Zamorano on October 22, 2004. On February 7, 2005, she was terminated by Robert Frank ("Mr. Frank"), Interim Dean of the School of Medicine.

Dr. Zamorano filed a six-count Complaint against Defendants in the Wayne

County Circuit Court.  Defendants removed the case on July 16, 2007.

Between April 2008 and May 2008, Dr. Zamorano took depositions of: (1) Ms. Radcliffe, WSU's Procurement Card Manager; (2) Dr. Oliver; (3) Mr. Lessem; (4) Mr. Davis; and (5) Ms. Hafner.  During the depositions, Defendants' counsel instructed the deponent not to answer questions related to: (1) telephone conversations Mr. Lessem had with Ms. Radcliffe; and (2) the October 2004 meeting; she believed the answers were protected by the attorney-client privilege.

Dr. Zamorano filed this motion on June 23, 2008.

### III.    MS. RADCLIFFE'S TELEPHONE CONVERSATIONS WITH MR. LESSEM

The first question Dr. Zamorano's counsel seeks an answer to relates to Ms. Radcliffe's telephone conversations with Mr. Lessem.  At Ms. Radcliffe's deposition, counsel for Dr. Zamorano asked Ms. Radcliffe, "did Lou Lessem give you any direction whatsoever in those two telephone conversations?"  Ms. Radcliffe's counsel asserted the attorney-client privilege and instructed her not to answer the question.

#### A.    First Telephone Conversation

Counsel for Ms. Radcliffe now concedes that the first conversation is not protected by the attorney-client privilege.  Ms. Radcliffe presents a declaration (under penalty of perjury) in an attempt to resolve the issue.  The declaration says during the first telephone conversation, Mr. Lessem: (1) asked her to provide various documents regarding Dr. Zamorano so he could provide them to a newspaper reporter in response to a request for information under the Freedom of Information Act; and (2) advised her to tell the media she could not provide any information regarding Dr. Zamorano because

3

the matter was confidential and personal.

Counsel for Dr. Zamorano says the declaration is insufficient because it does not allow him the opportunity to ask follow-up questions. *See Alexander v. F.B.I.*, 186 F.R.D. 113 (D.D.C. 1998). However, Dr. Zamorano's counsel does not specify what follow-up questions he wants to ask Ms. Radcliffe nor does he indicate how the proposed follow-up questions are relevant to Dr. Zamorano's claims.

Because: (1) Dr. Zamorano has the burden to show the follow-up questions are relevant under Fed. R. Civ. P. 26(b)(1); and (2) she did not meet that burden, counsel for Dr. Zamorano may not re-depose Ms. Radcliffe regarding her first telephone conversation with Mr. Lessem.

### B.     Second Telephone Conversation

Ms. Radcliffe does not address the substance of the second telephone conversation in her declaration because she says that conversation is privileged and irrelevant to Dr. Zamorano's due process claim. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter that is *relevant* to any party's claim or defense[.]") (emphasis added).

Ms. Radcliffe has the burden to prove the attorney-client privilege applies. *See United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2005) ("[t]he burden of establishing the existence of [a] privilege rests with the person asserting it") (citing *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983)).

The only information Ms. Radcliffe provides regarding the second conversation is that it: (1) pertained to the lawsuit; and (2) occurred after Ms. Radcliffe was served with Dr. Zamorano's Complaint. This is insufficient to meet her burden of proof.

4

Counsel for Dr. Zamorano may re-depose Ms. Radcliffe about the content of her second telephone conversation with Mr. Lessem.

## IV. OCTOBER 2004 MEETING

### A. Attorney-Client Privilege

At oral argument, counsel for Dr. Zamorano conceded question numbers seven, eight, and nine. The remaining six questions relate to what occurred during the October 2004 meeting. To determine whether Defendants should be compelled to answer those questions, the Court first considers whether the communications are protected by the attorney-client privilege.

In order for the attorney-client privilege to apply, Defendants have the burden to prove: (1) they sought legal advice; (2) from a professional legal adviser in his capacity as such; (3) the communications were related to that purpose; (4) the communications were made in confidence; (5) by the client; (6) they insisted the communications were permanently protected; (7) from disclosure by themselves or the legal adviser; and (8) the protection was not waived. *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citations omitted); *see also Dakota*, 197 F.3d at 825. There is no bright-line test for the applicability of the attorney-client privilege; it must be applied on a case-by-case basis. *Waugh v. Pathmark Stores, Inc.*, 191 F.R.D. 427, 430 (D.N.J. 2000) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396-97 (1981)).

The Court finds the communications at the October 2004 meeting are not protected by the attorney-client privilege for four reasons. First, the purpose of the October 2004 meeting is not clear; Defendants cannot definitively say it was held for the

5

purpose of seeking legal advice.

Dr. Zamorano's counsel asked Ms. Hafner, "Was Lou Lessem giving you legal advice during that meeting?" Ms. Hafner responded, "Not at that meeting." Mr. Davis testified that Mr. Lessem provided legal advice at the meeting, but also said the purpose of the October 2004 meeting was "[t]o provide updates on the situation so that all parties that should be concerned about the issue were fully up to date." In addition, counsel for Ms. Hafner stated, "I would like to put on the record that the purpose of this meeting was informational only, and you can ask Ms. Hafner about this meeting, but it's not intended to waive the privilege as to any legal advice that he gave at any subsequent times."

Second, the fact that: (1) Mr. King was present at the October 2004 meeting; and (2) Dr. Zamorano's entire audit file was presented to the Department of Public Safety is some evidence that Defendants waived the attorney-client privilege. *See In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996) (voluntary disclosure of information to a third party waives the attorney-client privilege). Further evidence of third party involvement is the fact that information gathered at the October 2004 meeting was referred to the Wayne County Prosecutor.

Third, counts I and II of Dr. Zamorano's Complaint allege Defendants Dr. Murali Guthikonda, Ms. Radcliffe, Ms. Hafner, Dr. Oliver, Mr. Herbert, Mr. Frank and Mr. Lessem violated her due process rights. The Due Process Clause requires, at a minimum, Defendants to give Dr. Zamorano notice and an opportunity to be heard on the allegations against her. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). The opportunity to be heard "must be granted at a meaningful

time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Counsel for Dr. Zamorano needs answers to the deposition questions to determine whether Dr. Zamorano's opportunity to be heard was "meaningful." For example, he needs to know if Dr. Zamorano told her version of the events to the correct Defendants and whether those Defendants considered her side of the story during their decisions to suspend and terminate Dr. Zamorano.

Defendants also stated during oral argument they intend to defend Dr. Zamorano's due process claims by showing that she was afforded the necessary due process. This defense places Defendants' conduct in issue. *See Pray v. New York City Ballet Co.*, 1997 WL 266980 at *1 (S.D.N.Y. May 19, 1997) ("[w]here . . . an employer relies on an internal investigation and subsequent corrective action for its defense, it has placed that conduct "in issue." . . . The employer has waived the protection of [the attorney-client privilege] concerning the investigation and subsequent remedial action by virtue of its defense.").

Finally, the fact that the attorney-client privilege reduces the amount of information discoverable during the course of a lawsuit and is to be narrowly construed weakens Defendants' argument that the privilege applies. *See United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) (the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege") (citations omitted); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3rd Cir. 1991) (citing *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1224,

7

1235 (3rd Cir. 1979); *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 375 (D.C. Cir. 1979); *Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 323 (7th Cir. 1963)).

### B. Specific Questions

Even assuming the attorney-client privilege protected some of the communications made at the October 2004 meeting, the Court would still compel answers to four questions:

- Question number two to Dr. Oliver, "[what] facts were considered at the [October 2004] meeting?"

- Question number three to Dr. Oliver, "What was your opinion [on what should be done regarding Dr. Zamorano's suspension] communicated to the group?"

- Question number five to Mr. Lessem, "who were the decision-makers [at the October 2004 meeting]?"

- Question number ten to Mr. Davis, "Regardless of what Mr. Lessem's thoughts or impressions were or advice was, I don't want to know that. I just want to know was the issue raised here . . . the standard for suspending [a non-tenured faculty member such as Dr. Zamorano], did that come up at all [at the October 2004 meeting]?"

Those questions were not artfully drafted during the deposition, but counsel for Defendants agrees that the information sought is discoverable if the questions were posed differently.

The Court would also compel an answer to question number six to Mr. Lessem, "During the course of the [October 2004] meeting was there any discussion concerning a linkage between fiscal mismanagement . . . and scientific integrity?" This question is not protected by the attorney-client privilege because it is an inquiry into the subject matter of the communication, not a communication for the purpose of obtaining legal

8

advice. *See Westhemeco Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702, 707 (D.C.N.Y. 1979).

The only question counsel for Dr. Zamorano would not be entitled to ask is question number four to Dr. Oliver, "[w]as the question of whether or not Dr. Zamorano ought to be able to testify, was that discussion matter – did that matter come up at all?" This is because Dr. Oliver replied, "I don't recall that at all," and re-deposing him about that topic would be futile.

## V. FEES AND COSTS

The Court grants Dr. Zamorano's request for attorneys' fees and costs. Defendants must pay the reasonable attorneys' fees and costs associated with Dr. Zamorano's motion and with taking second depositions. *See* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction – including the reasonable expenses and attorney fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent.").

Defendants' request for attorneys' fees and costs is denied.

## VI. CONCLUSION

Dr. Zamorano's motion is **GRANTED IN PART AND DENIED IN PART**. Counsel for Dr. Zamorano may re-depose:

   (1)   Ms. Radcliffe on question number one regarding her second telephone conversation with Mr. Lessem;

   (2)   Dr. Oliver on question number two regarding facts considered in the decisions to suspend and terminate Dr. Zamorano;

   (3)   Dr. Oliver on question number three regarding his opinion on Dr. Zamorano's suspension and termination;

(4) Mr. Lessem on question number five regarding the decision-makers at the October 2004 meeting;

(5) Mr. Lessem on question number six regarding whether there was a discussion about the linkage between fiscal mismanagement and scientific integrity; and

(6) Mr. Davis on question number ten regarding whether there was a discussion about the standard for suspending a non-tenured faculty member.

Counsel for Dr. Zamorano cannot re-depose:

(1) Ms. Radcliffe on question number one regarding her first telephone conversation with Mr. Lessem;

(2) Dr. Oliver on question number four regarding the decision made about Dr. Zamorano's ability to testify;

(3) Mr. Lessem on question number seven regarding why Dr. Zamorano's continued service would threaten grave and immediate injury to WSU (Dr. Zamorano withdrew this request);

(4) Mr. Lessem on question number eight regarding whether Dr. Zamorano's statement was valid or invalid (Dr. Zamorano withdrew this request); and

(5) Mr. Lessem on question number nine regarding whether WSU informed him that it found grant-related items at Dr. Zamorano's home (Dr. Zamorano withdrew this request).

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 22, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 22, 2008.

s/Carol A. Pinegar
Deputy Clerk