UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lucia Zamorano, M.D.,

       Plaintiff,

vs                                    Case No: 07-12943
                                          Honorable Victoria A. Roberts

Wayne State University, et al,

       Defendants.
_____/

**OPINION AND ORDER**

**I.**    **INTRODUCTION**

This matter is before the Court on Wayne State University ("WSU"), Dr. Murali Guthikonda, Louis Lessem, Dr. John Oliver, Carolyn Hafner, Christina Radcliffe, Dr. Robert Frank, and Michael Herbert's (collectively "Defendants") "Motion for Summary Judgment." (Doc. #96). These Defendants seek dismissal of counts I, II, III, IV, V, VII, VIII, and IX (all of the counts against them). Count VI is against Dr. Guthikonda; that count is the subject of a separate motion. Count VIII is the subject of this motion and a separate motion.

In count I, Dr. Lucia Zamorano claims she was discriminated against based on her gender, in violation of the Fourteenth Amendment, and further claims in counts I and II that she was denied procedural due process and a substantive right to equal protection under both federal and state law. Count I is a claim under 42 U.S.C. §1983.

Dr. Zamorano agrees to dismiss her gender allegations only, under count I. She also agrees to dismiss her state law causes of action alleged in counts III and V against

1

all Defendants; count IV against WSU only (Dr. Zamorano's claim in this count against Dr. Guthikonda and University Neurological Surgeons is the subject of a separate motion); and count IX against WSU only.  Accordingly, these claims are dismissed.  Dr. Zamorano abandoned her substantive equal protection claims.  She now alleges her equal protection rights were violated because she was treated as a "class of one."

Also before the Court is Dr. Zamorano's "Motion for Partial Summary Judgment." (Doc. #94).  Dr. Zamorano seeks summary judgment on her procedural due process claims (counts I and II) and asks the Court to find the Arbitrator's findings of fact conclusive.

Oral argument was heard on January 23, 2009.

For the following reasons, Defendants' motion is **GRANTED**; Dr. Zamorano's motion is **DENIED**.

## II.    BACKGROUND

### A.    Dr. Zamorano's Employment with WSU

In 1991, Dr. Zamorano accepted a two-year, non-tenured appointment with WSU as an Associate Professor (Academic Clinical Track) in the Neurosurgery Department. WSU had the option to renew Dr. Zamorano's appointment.  Dr. Zamorano's last appointment renewal was from July 1, 2003 through June 30, 2005.

In 2003, Dr. Zamorano earned a $3.4 million grant from the Michigan Economic Development Corporation.  In January 2004, WSU issued Dr. Zamorano a procurement card to purchase grant-related goods and services.

### B.    Charges on Dr. Zamorano's Procurement Card

2

In 2004, Christina Radcliffe, then Procurement Card Manager, questioned charges on Dr. Zamorano's procurement card for the period March 16, 2004 through April 15, 2004.  Radcliffe sent Dr. Zamorano a memorandum on May 13, 2004 requesting receipts for the charges.

On July 21, 2004, Radcliffe questioned additional charges and sent Dr. Zamorano a second memorandum requesting receipts for procurement card charges. This request was for the time period from May 14, 2004 through June 15, 2004.

Although Radcliffe sent follow-up e-mails and memoranda to Dr. Zamorano and Nancy Thayer, Dr. Zamorano's Procurement Card Coordinator, Dr. Zamorano says she did not receive them.  According to Dr. Zamorano, she did not arrange a meeting with Radcliffe about the charges until Thayer mentioned, in passing, that Radcliffe was investigating Dr. Zamorano's procurement card charges.

Dr. Zamorano's meeting with Radcliffe occurred on August 16, 2004.  At that time, Dr. Zamorano produced some receipts and reimbursed WSU for an unauthorized $1,900.00 BMW charge on the card.

Following the August 16th meeting: (1) Radcliffe and Dr. Zamorano engaged in a series of e-mail exchanges regarding missing receipts; and (2) Dr. Zamorano produced additional receipts or explanations.  Dr. Zamorano admits she fabricated BMW and SkyMall receipts, but Radcliffe believes other receipts were fabricated as well.

### C.   Meetings Regarding the Charges

In the Summer of 2004, Joan Gossman, WSU's Director of Purchasing, told John Davis, WSU's Vice President for Finance and Facilities Management, about the unauthorized charges on Dr. Zamorano's procurement card.

3

On August 24, 2004, Davis met with Carolyn Hafner, Assistant Vice President of Internal Audit; Bill King, Director of Public Safety; Kim Doherty, Deputy Director of Purchasing; and Radcliffe, to discuss the charges.  Radcliffe presented a summary of the charges and the receipts Dr. Zamorano produced.  Davis asked Hafner to conduct an internal audit investigation.

On October 1, 2004, Davis held a second meeting with Hafner; Louis Lessem, WSU's General Counsel; and Nancy Barrett, WSU's Provost, to update them on the Zamorano matter.

Davis held a third meeting in early October 2004 with Hafner; Barrett; Lessem; King; Dr. John Oliver, then Vice President of Research; and Michael Herbert, then Assistant Dean for Administration and Finance of WSU's Medical School.  Hafner presented the results of her investigation.  They discussed whether Dr. Zamorano should be suspended.

Davis, Dr. Oliver, Barrett, Herbert, and Lessem recommended suspension.  King and Hafner attended the meeting as resources, but were not involved in the recommendation to suspend Dr. Zamorano.

### D.     Dr. Zamorano's Suspension from WSU

In a letter dated October 22, 2004, Herbert suspended Dr. Zamorano with pay pending an investigation concerning:

(1)     Misuse and unauthorized use of a procurement card;

(2)     Intentional concealment of misuse and unauthorized use of a procurement card; and

(3)     Wrongful conversion of WSU and grant-related funds.
Dr. Zamorano received the letter on October 25, 2004.

4

**E.      Walter J. Piszczatowski's Communication with Lessem and Dr. Oliver**

Dr. Zamorano's criminal defense attorney, Walter J. Piszczatowski, asked

Lessem for a meeting in November 2004 to discuss options other than prosecuting Dr.

Zamorano.  During the meeting, Piszczatowksi talked about Dr. Zamorano's credentials

and her passion for research.  Piszczatowksi says he did not have an opportunity at the

meeting to explain Dr. Zamorano's position on the charges.

Following Piszczatowski's meeting with Lessem, Dr. Zamorano attended a

meeting with Piszczatowksi, Lessem, and Dr. Oliver.  Based on Piszczatowksi's advice

and Lessem's warning that her statements could be used against her in a criminal

proceeding, Dr. Zamorano did not speak at the meeting.  Lessem refused

Piszczatowksi's request for protection under Michigan Rules of Evidence 408 which

says:

> Evidence of: (1) furnishing or offering or promising to furnish, or (2)
> accepting or offering or promising to accept, a valuable consideration in
> compromising or attempting to compromise a claim which was disputed as
> to either validity or amount, is not admissible to prove liability for or
> invalidity of the claim or its amount.  Evidence of conduct or statements
> made in compromise negotiations is likewise not admissible.

Piszczatowksi presented a chart of the charges he believed were grant related

and told Lessem that Dr. Zamorano would pay whatever was necessary to resolve the

situation.  Dr. Zamorano says neither Lessem nor Dr. Oliver wanted to discuss the

situation or listen to Piszczatowksi.  According to Dr. Zamorano, Dr. Oliver said: (1) the

procurement card situation was out of the ordinary; (2) he already knew what discipline

he wanted to impose; (3) there was nothing to discuss; and (4) he was not going to read

5

the documents Piszczatowksi provided.

In a letter to Lessem dated November 15, 2004, Piszczatowski said Dr. Zamorano: (1) did not intend to take money from the grant or WSU; (2) did not want the procurement card; (3) expended over $7,500.00 of her own money for research; (4) believed WSU would deduct unauthorized charges from her salary; (5) believes she should receive some consideration because WSU did not inquire about the charges the first month it received the procurement card statements; (6) hopes WSU provides her the opportunity to continue her work in the lab; (7) welcomes monitoring and strict supervision; and (8) believes her life and background deserve leniency.

Piszczatowski sent Lessem three letters dated November 16, 2004. Charts were attached. One chart contained the grant-related purchases (including corresponding invoices or purchase confirmations). The other chart listed the purchases Dr. Zamorano's domestic partner, Susan Swider, made on the procurement card because she was unaware that the card contained restrictions and limitations.

The letters said: (1) Piszczatowski is interested in preserving Dr. Zamorano's relationship with WSU; (2) Dr. Zamorano's adherence to record keeping requirements was "lax" because she was preoccupied with larger grant issues; (3) WSU did not adhere to the required oversight mechanisms; (4) Dr. Zamorano did not receive monthly statements; (5) the unauthorized charges should be a "wash" because Dr. Zamorano used approximately $7,000.00 of her own money for grant-related purchases; (6) documents support an offset against Dr. Zamorano's salary and/or revocation of the procurement card as a remedy; (7) Dr. Zamorano shares credit cards with Swider who

6

randomly selected the procurement card to purchase personal items; and (8) Dr. Zamorano should receive the benefit of the doubt.  Piszczatowski asked Lessem to send a copy of his letters to individuals at WSU who would make the ultimate decision regarding Dr. Zamorano's discipline.

Lessem responded to these letters in a letter dated November 18, 2004.  His letter said WSU views the situation in a different light.

Piszczatowski sent Lessem a fifth letter dated December 7, 2004.  He attached receipts that show Dr. Zamorano charged grant-related items on her personal credit card.  He also reiterated that Dr. Zamorano did not intend to defraud WSU.

In a sixth letter to Lessem dated December 8, 2004, Piszczatowski explained the documents that Dr. Zamorano provided and which WSU believed were fabricated. Piszczatowski also enclosed a $5,120.16 check to cover: (1) charges on Dr. Zamorano's procurement card that were arguably unauthorized; and (2) purchases Swider made on the procurement card.  Piszczatowski told Lessem to deduct any other charges that should be repaid from Dr. Zamorano's salary.

In a seventh and final letter dated December 15, 2004, Piszczatowski told Lessem he wanted to talk in greater detail about options other than prosecution and termination of Dr. Zamorano's employment.

### F.    Dr. Zamorano's Attempts to Discuss the Charges with Dr. Robert R. Frank

Dr. Zamorano says she sent Dr. Robert R. Frank, then Interim Dean of WSU's School of Medicine, a letter; tried to arrange an interview with him through his secretary; and, told Dr. Frank in a hallway that she had tried to contact him.  Dr. Frank says he

7

was unaware of Dr. Zamorano's efforts to contact him.

### G.   Dr. Frank Terminates Dr. Zamorano's Employment

Dr. Frank terminated Dr. Zamorano's employment in a letter dated February 7, 2005 for four reasons.  The termination letter said Dr. Zamorano:

(1)   Used the procurement card on numerous occasions between February 2004 and August 2004 to purchase goods and services for her personal use;

(2)   Caused improper charges on her procurement card to be assessed against a research grant provided WSU by a third party;

(3)   Misrepresented the nature of the charges on her procurement card and fabricated numerous receipts; and

(4)   Allowed an unauthorized person to use her procurement card to make at least one personal purchase.

Dr. Frank said he decided to terminate Dr. Zamorano's employment based on discussions with Herbert in October, November, December, and January; one discussion with Barrett; and the content of the termination letter.

Dr. Frank testified at his deposition that he did not remember all the details of his conversations with Herbert, but knows Herbert told him information about the nature of the charges against Dr. Zamorano and the "specifics" around the misuse of grant funds. Dr. Frank remembered Herbert telling him Dr. Zamorano used her research grant to obtain "personal-type items," including repairs on her BMW and the amount of the car repairs.  He also knew Dr. Zamorano reimbursed WSU for the BMW charges.  Herbert did not provide Dr. Frank any documents relating to the charges on Dr. Zamorano's procurement card, tell Dr. Frank the total amount of the unauthorized charges on the card, or discuss the possibility of deducting the unauthorized purchases from Dr.

8

Zamorano's salary.

Dr. Frank's Declaration says Herbert told him: (1) the $1,900.00 BMW charge on Dr. Zamorano's procurement card was split into two charges, which appeared to be an intent to evade the $1,000.00 per transaction limit on procurement card charges; (2) Dr. Zamorano's BMW receipt indicated she purchased office furniture; (3) the BMW dealership provided a receipt that shows the procurement card was used for car repairs; and (4) Dr. Zamorano's procurement card was used for personal items at Williams-Sonoma and an airline catalog.  The Declaration also says Herbert told Dr. Frank that Dr. Zamorano made statements in her defense, including: (1) Swider made purchases on Dr. Zamorano's procurement card; (2) Dr. Zamorano believes some purchases were justified because they were used in the lab; and (3) Dr. Zamorano offered to reimburse WSU for the charges.  Despite the defense, Dr. Frank "strongly felt that repayment could not excuse [Dr. Zamorano's] behavior and that termination was warranted, regardless of her offer to repay the charges."

On February 14, 2005, Dr. Zamorano challenged her termination in a letter to Irvin D. Reid, then President of WSU, and in a separate letter to Dr. Frank.  Dr. Zamorano said her employment was terminated without due process and adequate cause and violated the collective bargaining agreement, WSU's Board of Governors' Statutes, and her employment contract.

The letter to Dr. Frank said, "I do not understand why you rejected my request to speak with you about this matter and denied me due process, which directly led to my termination.  Had you chosen to speak with me about this matter, I believe this situation could have been resolved and I could have continued my contributions to the University

9

as I have for the last fourteen years of my life."

### H.   Dr. Zamorano's Arbitration Proceeding

On February 10, 2005, the American Association of University Professors filed a grievance against WSU on behalf of Dr. Zamorano.  The grievance alleged Dr. Zamorano's employment with WSU was terminated without adequate cause and a hearing, and violated the collective bargaining agreement, WSU's Board of Governors' Statutes, and Dr. Zamorano's employment contract.  WSU did not respond.

An Arbitrator held a hearing on July 13, 2006, July 14, 2006 and September 20, 2006.  The purpose of the proceeding was to resolve two issues: (1) whether Dr. Zamorano received fundamental due process protections; and (2) whether Dr. Zamorano's employment with WSU was terminated for "adequate cause" as defined in section 2.51.01.160 of WSU's Board of Governors' Statutes:

> Faculty appointed under an agreement for a fixed term may be dismissed prior to the termination of the term for *adequate cause as follows:* (a) *for acts involving moral turpitude which bear adversely on the ability to perform responsibilities to the University*; (b) serious misrepresentation of fact relied upon in making the term appointment; (c) *for serious violation of academic standards and principles*; (d) failure to perform academic assignments competently.

(Emphasis added).

Dr. Zamorano's contract with University Neurological Surgeons was not part of the arbitration proceeding.

The Arbitrator issued an opinion on February 6, 2007.  She found: (1) Dr. Zamorano did not have an opportunity to personally present her defense; (2) WSU made the decision to terminate Dr. Zamorano's employment before Piszczatowski presented his arguments; and (3) Dr. Zamorano's employment was not terminated for

10

"adequate cause."

While the Arbitrator did not have the authority to renew Dr. Zamorano's appointment with WSU, she awarded Dr. Zamorano salary through June 30, 2005 (the date on which Dr. Zamorano's appointment with WSU expired). WSU was also required to delete any mention of suspension and termination from Dr. Zamorano's personnel records and place Dr. Zamorano on voluntary academic status for two years. **III.**

### STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the

11

nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.   DEFENDANTS AND DR. ZAMORANO'S MOTION FOR SUMMARY JUDGMENT ON DR. ZAMORANO'S PROCEDURAL DUE PROCESS CLAIMS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983 (Count I) AND UNDER THE MICHIGAN CONSTITUTION (Count II)

Count I of Dr. Zamorano's Complaint is brought under 42 U.S.C. §1983 against Radcliffe, Hafner, Dr. Oliver, Herbert, Dr. Frank, and Lessem (collectively "the §1983 Defendants"). To prevail, Dr. Zamorano must demonstrate that the §1983 Defendants, acting under state law, deprived her of rights secured by the United States Constitution and federal law. *See Parratt v. Taylor*, 451 U.S. 527, 532 (1981) (quoting 42 U.S.C. §1983). Along with Dr. Zamorano's procedural due process claim under the United States Constitution, the Court discusses Dr. Zamorano's procedural due process claim under the Michigan Constitution; the parties agree the procedural due process rights protected under both are the same.

Since §1983 alone creates no substantive right, Dr. Zamorano's claims survive summary judgment only if there is no genuine issue of material fact concerning the two essential elements to a §1983 action: (1) whether the conduct complained of was committed by a person acting under state law; and (2) whether this conduct deprived Dr. Zamorano of rights, privileges or immunities secured by the Constitution or laws of the United States. *See id.* at 535.

Dr. Zamorano claims the §1983 Defendants violated her Fourteenth Amendment right to procedural due process by terminating her from her position.

12

The Due Process Clause of the Fourteenth Amendment provides: no State shall "deprive any person of life, liberty, or property, without due process of law."

Dr. Zamorano's claims satisfy several prerequisites for a valid due process claim: The §1983 Defendants are state actors and Dr. Zamorano suffered a deprivation; she lost her job. Numerous courts make clear that positions - even non-tenured ones such as Dr. Zamorano's - can be federally protected property interests. To have a property interest in employment at WSU, Dr. Zamorano must have more than an abstract need, desire, or unilateral expectation of employment; she must have a legitimate claim of entitlement to it. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Property interests are created by state statute, a formal contract, or a contract implied from the circumstances. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citing *Perry v. Sindermann*, 408 U.S. 593, 602 (1972); *Bailey v. Floyd County Bd. of Educ. By and Through Towler*, 106 F.3d 135, 141 (6th Cir. 1997); *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir. 1991)).

Defendants concede that Dr. Zamorano had a constitutionally protected property interest in her employment at WSU until June 30, 2005. And, it is undisputed that Dr. Frank deprived Dr. Zamorano of that property interest when he terminated her employment on February 7, 2005.

Because Dr. Zamorano had a constitutionally protected property interest, the Court need not address whether she was deprived of a liberty interest. *See* Pl. Resp. Br. p.19 n.15 ("it is immaterial whether plaintiff also may have had a liberty interest protected by the fourteenth amendment. [W]hile plaintiff asserts that she has such an

13

interest, she gains no further protection by establishing the independent liberty interest").

The analysis does not end there, however.  The Fourteenth Amendment does not protect against all deprivations, only those deprivations that occur "without due process of law."  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

In *Parratt*, the Supreme Court reviewed several cases as it grappled with the question, "what process is due a person when an employee of a State negligently takes his property."  *Parratt*, 451 U.S. at 537.

In all of the cases reviewed by the *Parratt* Court, deprivations of property were authorized by an established state procedure, and due process was held to require predeprivation notice and a hearing, "in order to serve as a check on the possibility that a wrongful deprivation would occur."  *Id.* at 538, analyzing *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950) (statute that allowed a trust company seeking judicial settlement of its trust accounts to give notice to beneficiaries by publication was struck down on due process grounds – personal notice was required); *Bell v. Burson*, 402 U.S. 535 (1971) (an individual's driver's license cannot be summarily taken without a prior hearing); and *Fuentes v. Shevin*, 407 U.S. 67 (1972) (due process requires a hearing before the State could seize property in a debtor's possession).

*Parratt* stands for the proposition that unless exigencies or impracticabilities prevent it, "some kind of hearing is required at some time before a State finally deprives a person of [her] property interests."  *Parratt*, 451 U.S. at 540; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("*Loudermill I*") ("'[T]he root requirement' of the Due Process Clause [is] . . . 'that an individual be given an opportunity for a

14

hearing *before* [she] is deprived of any significant protected interest'") (emphasis in original) (citations omitted).

However, the *Parratt* Court rejected the proposition that "at a meaningful time and in a meaningful manner" "*always* requires the State to provide a hearing prior to the initial deprivation of property."  *Parratt*, 451 U.S. at 540 (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (emphasis in original).

Based on the foregoing, the §1983 Defendants were not required to grant Dr. Zamorano a predeprivation hearing if:

(1)   It was necessary for the §1983 Defendants to remove her quickly from her position;

or

(2)   It was impractical for the §1983 Defendants to provide Dr. Zamorano with meaningful predeprivation process; and

(3)   Meaningful means were available after Dr. Zamorano was terminated to assess the propriety of her termination.

*See Parratt*, 451 U.S. at 539.

Dr. Zamorano does not dispute that her post-deprivation process (arbitration) satisfied due process, and the §1983 Defendants do not argue that exigent or impractical circumstances prevented them from holding a predeprivation hearing; they contend Dr. Zamorano got the process she was due.  Dr. Zamorano obviously disagrees.

The question thus becomes, what is the "some kind of hearing," the *Parratt* court says is required?  *Id.* at 540.

The Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)

15

acknowledged that with the exception of one case, *Goldberg v. Kelly,* 397 U.S. 254 (1970), where the Court held a hearing closely approximating a judicial trial is necessary, the Court "has spoken sparingly about the requisite procedures."

Although the Court had spoken sparingly until then, the Court made clear in *Zinermon v. Burch*, 494 U.S. 113 (1990) that the constitutional violation under §1983 is "not complete unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 126.  In other words, while a state actor may have terminated a protected property interest in a job, the deprivation does not reach constitutional proportions - or amount to a federal cause of action - unless the deprivation was undertaken without constitutional safeguards in place and actually utilized.

*Zinermon* instructs that to determine whether a constitutional violation has occurred, it is necessary to ask:

(1)     What process the state provided; and

(2)     Whether it was constitutionally adequate.

*Id.*

**WHAT PROCESS DID THE STATE PROVIDE DR. ZAMORANO?**

While WSU has an elaborate procedure the §1983 Defendants must follow to terminate a tenured staffer, no such predeprivation process is outlined for someone in Dr. Zamorano's position; only post-deprivation process is provided.  The lack of a written procedure is not a constitutional violation and, the §1983 Defendants did afford Dr. Zamorano some predeprivation process.  Due Process requires, at a minimum, that Dr. Zamorano receive notice and an opportunity to be heard before her employment was terminated.  *See Mullane*, 339 U.S. at 313.  Specifically, Dr. Zamorano must have

16

received: (1) oral or written notice of charges; (2) an explanation of the evidence against her; and (3) an opportunity to present her side of the story.  *See Loudermill I,* 470 U.S. at 546.

At the hearing held on January 23, 2009, counsel for Dr. Zamorano conceded that Dr. Zamorano received sufficient notice of the charges and an explanation of the evidence.  Although she was given the opportunity to respond, counsel for Dr. Zamorano says it was not a full opportunity to present her side of the story.  While she and her attorney were afforded meetings, the numerous letters written on her behalf by her attorney that explained her position, were never read by Dr. Frank, the decisionmaker.  As her counsel described it, "there's this gulf between the opportunity that was given her with Mr. Lessem and Mr. Piszczatowski and these meetings in November and the letters in November and the letters in December and then the ultimate decision by Dr. Frank in February of 2005 to terminate her.  There's a big disconnect there."

Defendants concede Dr. Frank did not read the letters, but contend it was not necessary for him to read them for Dr. Zamorano to receive all of the process she was due.

Defendants rely on *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304 (6th Cir. 1988) ("*Loudermill II*") for the proposition that due process does not require that specific information be given to the ultimate decisionmaker.  In *Loudermill II,* the plaintiff had a meeting with his supervisor who passed information to the decisionmaker, and the Court held that was adequate due process.  *Loudermill II*, 844 F.2d at 311-12. Defendants say Dr. Frank was provided with all pertinent information and, importantly,

17

he was aware of the charges Dr. Zamorano contested and her reasons.  Defendants say Dr. Zamorano was given the opportunity to present contrary evidence, but instead of doing that, she offered excuses and pled for leniency.  They denied her request for leniency by terminating her employment.

**WAS THE PROCESS AFFORDED DR. ZAMORANO CONSTITUTIONALLY ADEQUATE?**

To determine whether Dr. Zamorano received a constitutionally adequate predeprivation hearing even though Dr. Frank did not read the seven letters Piszczatowksi sent, the Court balances four factors:

(1)    the private interest affected by the official action;

(2)    the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

(3)    the Government's interest, including the function involved and the financial and administrative burdens that the additional or substitute procedural requirement would entail; and

(4)    the options for post-deprivation review.

See Eldridge, 424 U.S. at 335 (citation omitted); Leary v. Daeschner, 228 F.3d 729, 743 (6th Cir. 2000) (citation omitted).

With respect to the first factor, Dr. Zamorano's livelihood and reputation were affected when Dr. Frank terminated her employment, but the effect was not substantial. She only had 4 ½ months remaining on her contract with WSU.  Further, the Arbitrator required WSU to remove any mention of Dr. Zamorano's suspension and termination from her personnel file, and she was paid her full salary.

The second factor requires an evaluation of the risk that Dr. Zamorano's

employment was erroneously terminated.  That risk was very low; Dr. Zamorano does not dispute that she used her procurement card for non-grant related purchases. [WSU Board of Governors' Statutes allowed WSU to terminate employees for acts involving moral turpitude].

The third factor requires an evaluation of any additional burdens placed on Defendants if different process had been provided Dr. Zamorano.  Providing Piszczatowski's letters to Dr. Frank would not impose a financial or administrative burden on Defendants.  However, as already stated, Defendants were not required to give them to Dr. Frank.  In *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976), the Sixth Circuit said the ultimate decisionmaker must "consider and appraise" the evidence to develop an understanding.  *Bates*, 547 F.2d at 332 (quoting 2 Davis Administrative Law §11.03 at 44-45 (1958)).  This task could be satisfied if Dr. Frank read a summary or analysis prepared by subordinates, as long as it fairly summarizes the evidence and is not deficient or factually inaccurate.  *See id.* at 333.

After reviewing Dr. Frank's Declaration, the Court finds he had a fair and adequate summary of Dr. Zamorano's side of the story before making the decision to terminate her employment.

The Court considers Dr. Frank's Declaration because it does not contradict his deposition testimony.  *See Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) ("a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that *essentially contradicts his earlier deposition testimony*") (emphasis added) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).

19

In addition, Defendants have a strong interest in preventing employees from causing WSU economic harm.

The final factor takes into account the post-deprivation process.  Dr. Zamorano had an elaborate post-deprivation grievance and arbitration proceeding.  The arbitration process lasted three days with both sides presenting evidence.   Dr. Zamorano concedes it was sufficient.

After balancing the necessary factors, the Court finds there is no genuine issue of material fact; Dr. Zamorano was afforded constitutionally adequate procedural due process.

This holding takes into consideration the fact that a predeprivation hearing: (1) need not be elaborate; and (2) need only determine whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action.  "[C]ourts construing the Supreme Court's language in *Loudermill* have required only the barest of pretermination procedure, especially when an elaborate post-termination procedure is in place."  *See Loudermill I*, 470 U.S. at 545; *Loudermill II*, 844 F.2d at 312.

Finally, predeprivation hearings are intended only as an "initial check" on the employer's decision, and "need not definitively resolve the propriety of the action." *Loudermill I*, 470 U.S. at 545.  Indeed, the elaborate post-deprivation proceeding which Dr. Zamorano hails as more than sufficient process, vindicated Dr. Zamorano and ferreted out any impropriety on the part of the §1983 Defendants in their actions against Dr. Zamorano.

Dr. Zamorano fails to state a constitutional violation, and her §1983 claim fails as

20

a matter of law.  It follows that her claim under the Michigan Constitution fails.

Since no constitutional violation occurred, the Court need not reach the question of qualified immunity.

**V.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DR. ZAMORANO'S REMAINING CLAIMS**

**A.    Violation of Equal Protection Rights under the United States and Michigan Constitutions Based on the "Class of One" Theory (Counts I and II)**

Dr. Zamorano says her equal protection rights were violated based on a "class of one" theory because she was denied procedural due process for arbitrary and irrational reasons, while A.D. and M.B. – similarly situated individuals – were afforded procedural due process.

On September 24, 2007, two WSU employees in the College of Engineering, "A.D. and M.B.," were placed into an unpaid Indefinite Suspension status.  In a letter dated November 21, 2007, the Dean of the College of Engineering said, "In an effort to gather all relevant facts before making a decision in this matter, it is important that you are given an opportunity to tell your side of the story."  An Investigative Interview was held on November 27, 2007.  A.D. and M.B.'s attendance was mandatory, their Union representative was allowed to attend, and A.D. and M.B. could bring all documents and/or defenses they wished to have considered.

Dr. Zamorano cites *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) to support her argument.  *See Olech*, 528 U.S. at 564 ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment") (citing *Sioux City Bridge Co. v. Dakota County, Nebraska*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, W. Virginia*, 488 U.S. 336 (1989)).

In *Engquist v. Oregon Dep't of Agric.*, 128 S.Ct. 2146 (2008), the Supreme Court held "a 'class of one' theory of equal protection has no place in the public employment context." *Engquist*, 128 S.Ct. at 2148-49.

Dr. Zamorano says *Engquist* only bars claims against public employers when the employer makes a discretionary decision (i.e, in the context of personnel decisions). Dr. Zamorano says *Engquist* does not bar her claim because due process is not a discretionary decision.

Even assuming Dr. Zamorano can bring an equal protection claim against the §1983 Defendants on a "class of one" theory, her claim fails as a matter of law because A.D. and M.B. were not "similarly situated" to Dr. Zamorano. First, while Dr. Zamorano was represented by a union, A.D. and M.B. were represented by a different union with different representation rights.

Second, A.D. and M.B. were charged with falsification of time records and unauthorized overtime in addition to unauthorized use of a procurement card.

Third, Dr. Zamorano was a faculty member in the Neurosurgery Department; A.D. and M.B. were non-faculty support staff in the Engineering Department.

Finally, A.D. and M.B.'s collective bargaining agreement was different than Dr. Zamorano's, in terms of the pre-termination procedures. A.D. and M.B.'s collective bargaining agreement provides a termination disciplinary procedure, while Dr. Zamorano's disciplinary procedure was based on an internal audit investigation.

22

**B.      State-Law Claims**

Before analyzing Dr. Zamorano's state-law claims, the Court notes that under 28 U.S.C. §1367(a), it has supplemental jurisdiction over state-law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Section 1367(c) allows the Court to decline to exercise supplemental jurisdiction over the state-law claims when all the federal claims are dismissed.

Dr. Zamorano's state-law claims form part of the same case or controversy as her federal claims.  The Court elects to exercise supplemental jurisdiction over the state-law claims.

**1.      Dr. Zamorano's Motion to Find the Arbitrator's Findings of Fact Conclusive**

Pursuant to the collateral estoppel doctrine, Dr. Zamorano asks the Court to adopt 92 of the Arbitrator's findings of fact and hold they are conclusively established for purposes of her state-law claims.  *See* Pl. Exh. 1 (chart entitled "Proposed Findings of Fact that this Court Should Deem Conclusively Determined as a Matter of Law under Principles of Collateral Estoppel").

The Court denies Dr. Zamorano's request as to WSU; Dr. Zamorano voluntarily dismissed all state-law claims against WSU.

The question is whether the Court should find 92 of the Arbitrator's findings of fact conclusively established for purposes of the state-law claims Dr. Zamorano did not dismiss against the remaining Defendants:

(1)      count IV:  violation of the Elliot Larsen Civil Rights Act - Sexual Discrimination against Dr. Guthikonda and University Neurological

23

Surgeons (addressed in a separate motion);

(2)    count VI: breach of fiduciary duty against Dr. Guthikonda (addressed in a separate motion);

(3)    count VII: Invasion of Privacy - False Light against Lessem;

(4)    count VIII: intentional infliction of emotional distress against Radcliffe, Hafner, Dr. Oliver, Herbert, Dr. Frank, Lessem, and Dr. Guthikonda (addressed in this motion and in a separate motion); and

(5)    count IX: conspiracy.

Collateral estoppel applies when:

(1)    the issue in the subsequent litigation is identical to that resolved in the earlier litigation,

(2)    the issue was actually litigated and decided in the prior action,

(3)    the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,

(4)    the party to be estopped was a party to the prior litigation (or in privity with such a party), and

(5)    the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir. 1999) (citations omitted).

The issues resolved in the arbitration proceeding were: (1) whether Dr. Zamorano received fundamental due process protections; and (2) whether Dr. Zamorano's employment was terminated for "adequate cause." Those issues are not identical to whether Defendants conspired to terminate Dr. Zamorano's employment, whether Dr. Guthikonda breached his fiduciary duty; or, whether Dr. Zamorano suffered emotional distress, was sexually discriminated against, and placed in a false light.

Dr. Zamorano's request fails on the first element.

24

**2.    Invasion of Privacy - False Light Claim Against Lessem (Count VII)**

In response to a Freedom of Information Act request by Patricia Anstett, a reporter for the *Detroit Free Press*, for "Any and all correspondence between Dr. Zamorano and WSU regarding expenses on her WSU credit card," Lessem said, "I have not yet fully determined whether or not there has been such correspondence, and will supplement this response accordingly."  Lessem did not send the letters from Piszczatowski because he did not believe they constituted correspondence between *Dr. Zamorano* and WSU.

Anstett also sent Lessem an e-mail asking for: (1) the amount of the check Piszczatowski provided WSU for reimbursement; and (2) the reason why WSU did not cash the check.  Lessem said the amount of the check was well under half the amount at issue, and "I can't tell you how he came up with the number.  The check was . . . sent much as one might respond upon realizing that one had inadvertently overlooked a personal credit card payment."

Dr. Zamorano says she was placed in a false light on the front page of the *Detroit Free Press* due to Lessem's untrue statements.

Dr. Zamorano's claim fails as a matter of law.

"False light invasion of privacy requires a communication broadcast to the public in general or publicized to a large number of people which places the injured party in a light which would be highly offensive to a reasonable person."  *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 157 Mich.App. 618, 630 (1986).

Lessem did not broadcast his statements to the general public or to a large

25

number or people.  The statements were only made to Anstett and did not appear in the

*Detroit Free Press* article.

Further, the *Detroit Free Press* article did not place Dr. Zamorano in a false light.

While the article quotes Lessem as saying, "[a]bout $14,000-$15,000 in disputed non-

grant items are at issue," it goes on to say Piszczatowski wrote WSU a $5,120.16 check

to cover charges on the procurement card that are not grant related.  It also discusses

Dr. Zamorano's accomplishments, the amount Dr. Zamorano spent of her own money

for the grant program, and purchases Swider made on the procurement card.

### 3.    Intentional Infliction of Emotional Distress Claim Against Radcliffe, Hafner, Dr. Oliver, Herbert, Dr. Frank, Lessem, and Dr. Guthikonda (Count VIII)

To succeed on her claim for intentional infliction of emotional distress, Dr.

Zamorano must prove: (1) extreme and outrageous conduct; (2) intent or recklessness;

(3) causation; and (4) severe emotional distress.  *Roberts v. Auto-Owners Ins. Co.*, 422

Mich. 594, 602 (1985).  Liability has only been found:

> where the conduct has been so outrageous in character, and so extreme
> in degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized community.
> Generally, the case is one in which the recitation of the facts to an
> average member of the community would arouse resentment against the
> actor, and lead him to exclaim, "Outrageous!"

*Id.* at 602-03 (quoting Restatement (Second) of Torts §46, comment d, p. 72-73).

Further, "[t]he law intervenes only where the distress inflicted is so severe that no

reasonable man could be expected to endure it."  *Id.* at 608-09 (quoting Restatement

(Second) of Torts §46, comment j, p.77).

It is not "utterly intolerable in a civilized community," *See Roberts*, 422 Mich. at

603, to terminate an employee for the unauthorized use of a procurement card and the misrepresentation of the nature of purchases on the card.  Indeed, Dr. Zamorano received adequate notice and an opportunity to be heard before her employment was terminated.

Further, Dr. Zamorano: (1) only saw a cardiologist due to heart problems in her family; (2) passed her stress test; (3) does not have a medical ailment; (4) only visits doctors for normal medical check-ups; (5) has not seen a psychologist or psychiatrist for counseling since 2000; (6) is not taking medication (except Xanax at night, if she is stressed); and (7) does not have a mental condition.

Based on the foregoing, Dr. Zamorano fails to demonstrate as a matter of law that Defendants' conduct was extreme and outrageous or that she suffered severe emotional distress.

### 4.    Conspiracy Claim Against All Defendants (Except WSU) (Count IX)

Dr. Zamorano says all Defendants (except WSU) conspired to destroy her career, reputation, and financial well-being.

To succeed on her civil conspiracy claim, Dr. Zamorano must prove: (1) two or more persons; (2) used concerted action; (3) to accomplish an unlawful purpose.  *See Admiral Ins. Co. v. Columbia Casualty Ins. Co.*, 194 Mich.App. 300, 313 (1992) (citing *Feaheny v. Caldwell*, 175 Mich.App. 291, 307 (1989); *Temborius v. Slatkin*, 157 Mich.App. 587, 599-600 (1986)).

Defendants are members of the same collective entity.  Therefore, they are not separate people for conspiracy purposes.  *See Hull v. Cuyahoga Valley Joint Vocational*

27

*Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991).

Dr. Zamorano cannot succeed on her conspiracy claim as a matter of law.

**VI.    CONCLUSION**

**A.    Defendants' Motion for Summary Judgment**

Defendants' motion is **GRANTED**.  Dr. Zamorano **VOLUNTARILY DISMISSES**:

(1) count I - violation of equal protection rights under the Fourteenth Amendment to the

United States Constitution (gender claim only); (2) count III - tortious interference with a

business expectancy and opportunity; (3) count IV - violation of the Elliot Larsen Civil

Rights Act - Sexual Discrimination (against WSU only); (4) count V - violation of the

Elliot Larsen Civil Rights Act - Hostile Working Environment; and (5) count IX -

conspiracy (against WSU only).

The Court **DISMISSES** Dr. Zamorano's remaining claims:

(1)    Against Radcliffe, Hafner, Dr. Oliver, Herbert, Dr. Frank, and
       Lessem for violation of her procedural due process rights under
       both federal and state law (counts I and II);

(2)    Against Radcliffe, Hafner, Dr. Oliver, Herbert, Dr. Frank, and
       Lessem for violation of her equal protection rights based on the
       "class of one" theory (counts I and II);

(3)    Against Lessem for Invasion of Privacy - False Light (count VII);

(4)    Against Radcliffe, Hafner, Dr. Oliver, Herbert, Dr. Frank, Lessem,
       and Dr. Guthikonda for intentional infliction of emotional distress
       (count VIII); and

(5)    Against all remaining Defendants for conspiracy (count IX).

**B.    Dr. Zamorano's Partial Motion for Summary Judgment**

Dr. Zamorano's motion for summary judgment on her procedural due process

claims (counts I and II) is **DENIED**.  Dr. Zamorano's request to find 92 of the Arbitrator's

findings of fact conclusively established is **DENIED**.

        **IT IS ORDERED**.

                                              s/Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated:  January 30, 2009

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 30, 2009.<br><br>s/Linda Vertriest<br>Deputy Clerk |