UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LUCIA ZAMORANO, M.D.,**

           Plaintiff(s),         **CASE NUMBER: 07-12943**
                                      **HONORABLE VICTORIA A. ROBERTS**

v.

**WAYNE STATE UNIVERSITY,**
a Michigan Educational Institution,
by the Wayne State University Board
of Governors, its statutory governing body;
**MURALI GUTHIKONDA, M.D.; LOUIS LESSEM;
JOHN OLIVER; CAROLYN HAFNER;
CHRISTINA RADCLIFFE; ROBERT FRANK;
MICHAEL HERBERT; and
UNIVERSITY NEUROLOGICAL SURGEONS,**

           Defendant(s).
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.**      **INTRODUCTION**

This matter is before the Court on University Neurological Surgeons ("UNS") and Dr. Murali Guthikonda's (collectively "Defendants") "Motion for Summary Judgment." (Doc. #95). Defendants seek dismissal of counts IV, V, VI, and VIII. In a separate motion, Dr. Guthikonda joins other Defendants to dismiss Dr. Lucia Zamorano's claims regarding her termination from Wayne State University ("WSU").

Counts I, II, and VII are against other individual Defendants and are the subject of a separate motion. Count III is against Dr. Guthikonda, but Dr. Zamorano voluntarily dismissed it with prejudice, along with count V. Count IX is against all Defendants

1

(except WSU) and is the subject of a separate motion.

For the following reasons, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## II. BACKGROUND

### A. Dr. Zamorano and Dr. Guthikonda's Employment with WSU and the University Neurological Surgical Association

In 1991, Dr. Zamorano accepted a two-year, non-tenured appointment with WSU as an Associate Professor (Academic Clinical Track) in the Neurosurgery Department. Shortly after Dr. Zamorano joined the WSU faculty, she became a member and employee of University Neurological Surgical Association ("UNSA"), a for-profit clinical practice group.

In 2003, Dr. Zamorano earned a $3.4 million grant from the Michigan Economic Development Corporation. In January 2004, WSU issued Dr. Zamorano a procurement card to purchase grant-related goods and services.

Dr. Guthikonda joined the WSU faculty in 1993 as an Assistant Professor in the Neurosurgery Department. He also joined UNSA.

On October 1, 2001, Dr. Guthikonda accepted an appointment as Interim Chairman of the Neurosurgery Department. Dr. Guthikonda became Chairman of the Neurosurgery Department in June 2005.

### B. Conversion from UNSA to UNS

In 2003, UNSA converted from a for-profit clinical practice group to UNS, a non-profit clinical practice group.

The purpose of UNS was to furnish medical care and related services in the

speciality of neurosurgery through physicians holding appointments in the clinical faculty of WSU.

UNS consisted of class A members and one class B member. Class A members included physicians holding faculty appointments in the Department of Neurosurgery (other than the Chairman). The only class B member was the Chairman, Acting Chairman, or Interim Chairman of the Department. Dr. Zamorano and Dr. Setti Rengachary were the class A members; Dr. Guthikonda was the class B member and the President.

Drs. Zamorano, Rengachary, and Guthikonda comprised the three member UNS Board of Directors. They were all entitled to written notice of the time, place and purposes of each meeting.

Dr. Guthikonda did not conduct meetings on a regular basis; he believed the members knew what was happening.

**C.     Dr. Zamorano's Employment with WSU and UNS is Terminated**

Dr. Robert R. Frank, then Interim Dean of WSU's School of Medicine, terminated Dr. Zamorano's employment on February 7, 2005.

On June 10, 2005, Drs. Guthikonda and Rengachary held a "Meeting of the Board of Directors." They discussed Dr. Zamorano's termination from WSU and agreed to terminate Dr. Zamorano's membership and employment with UNS. Dr. Guthikonda did not give Dr. Zamorano notice of the meeting.

In a letter dated June 20, 2005, Dr. Guthikonda informed Dr. Zamorano that he terminated her employment and membership because the by-laws require UNS members to be a WSU faculty member, and she was no longer part of the WSU faculty.

3


Dr. Guthikonda says he did not terminate Dr. Zamorano's employment and membership in February 2005 (when her employment with WSU was terminated) for two reasons: (1) he would not have to terminate Dr. Zamorano's employment and membership if her faculty appointment with WSU was reinstated; and (2) he did not want to take part in the termination if he left WSU for a job at The Ohio State University's School of Medicine.

On February 6, 2007, WSU appointed Dr. Zamorano to Clinical Professor voluntary academic status for two years. The appointment was mandated by an Arbitrator so Dr. Zamorano could regain privileges and qualification at University-affiliated medical facilities where such Clinical Professor voluntary academic status affiliation is required.

## III.  STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV. APPLICABLE LAW AND ANALYSIS

The Court notes that all of Dr. Zamorano's federal claims were dismissed in an Order entered on January 30, 2009. Under 28 U.S.C. §1367(c), the Court can decline to exercise supplemental jurisdiction over pendent state-law claims when all the federal claims are dismissed. On the other hand, the Court may exercise supplemental jurisdiction over state-law claims against Defendants that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

Dr. Zamorano's state-law claims against Defendants form part of the same case or controversy as her federal claims. The Court elects to exercise supplemental jurisdiction over them.

### A. Elliot Larsen Civil Rights Act - Sexual Discrimination Claim Against Dr. Guthikonda and UNS (Count IV)

Dr. Zamorano says Defendants discriminated against her on the basis of sex, in violation of MCLA §37.2202(1)(a): "An employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to

5

employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." Specifically, Dr. Zamorano claims that Dr. Guthikonda terminated her from UNS and denied her status as a voluntary faculty.

To establish a prima facie case of sexual discrimination, Dr. Zamorano must prove she: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was terminated under circumstances that give rise to an inference of unlawful discrimination (i.e., she was treated different than similarly situated males).  *See Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 172-73 (1998).

Defendants concede the first two elements.

### 1.    Qualified to be a Member and Contract Employee of UNS

Dr. Zamorano's Employment Agreement with UNS gave UNS the option to terminate her employment: "During the Initial Term or any Renewal Term, this Agreement *may* be terminated by the Corporation . . . upon 30 days written notice in the event of termination of Employee's faculty position with Wayne State University School of Medicine."  (Emphasis added).

Dr. Zamorano concedes she was not a member of the WSU faculty when Dr. Guthikonda terminated her from UNS, but says Dr. Guthikonda could have awarded her voluntary faculty status and allowed her to continue her membership in UNS. Dr. Zamorano says she wrote Dr. Guthikonda a letter requesting a voluntary faculty appointment after she was terminated from UNS, but he did not respond.

In the alternative, Dr. Zamorano says she was eligible for employment by UNS

on a contract basis. Dr. Zamorano raises this argument for the first time in her Response Brief.

Dr. Guthikonda says the Chairman of the Neurosurgery Department can recommend that an employee be given voluntary faculty status, but the Provost must approve the recommendation. Dr. Guthikonda did not recommend Dr. Zamorano for voluntary faculty status because he did not believe he could nominate someone who was terminated from WSU for a legal issue.

Dr. Guthikonda did not consider the second option – contract employment of Dr. Zamorano – he says she did not ask for contract status.

Drs. Fernando Diaz, Richard Fessler, Daniel Michaels, and Robert Johnson were full-time faculty members who chose to become voluntary faculty. None of them was a member of UNS, although there does not appear to be any contract language that prohibits voluntary faculty from membership in UNS.

Article VI of UNS's Articles of Incorporation says, "There shall be two (2) classes of members in the corporation. The Class A Members shall be individuals holding *faculty* appointments in the Department of Neurosurgery of the School of Medicine[.]" The UNS by-laws say, "There shall be two (2) classes of members in the corporation. The Class A Members shall be physicians holding *faculty* appointments in the Department of Neurosurgery of the School of Medicine[.]" The Preamble to UNS's Implementation Agreement says, "The Group employs physicians holding *faculty* appointments to provide professional services in the speciality of neurosurgery." (Emphasis added).

Based on the foregoing, it appears that no distinction is made between voluntary

and paid faculty. Had Dr. Guthikonda recommended Dr. Zamorano for voluntary faculty status, she could have maintained her membership in UNS (if the Provost approved Dr. Guthikonda's recommendation).

Further, Dr. Guthikonda could have employed Dr. Zamorano on a contract basis.

A genuine issue of material fact exists regarding whether Dr. Zamorano was qualified to be a member or employee of UNS at the time her employment and membership was terminated.

> **2. Terminated Under Circumstances that Give Rise to an Inference of Unlawful Discrimination (i.e., whether Dr. Zamorano was treated different than similarly situated males)**

Dr. Zamorano says she was treated different than Drs. Diaz, Fessler, Michaels, and Johnson because Dr. Guthikonda allowed them voluntary faculty status, but denied her request for voluntary faculty status.

To prove she was treated different, Dr. Zamorano must show "all of the relevant aspects" of her employment were "nearly identical" to those of Drs. Diaz, Fessler, Michaels, and Johnson. *See Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 699-700 (1997) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Dr. Zamorano cannot meet this burden.

Dr. Zamorano is a former member and employee of UNS and a former WSU faculty member who was terminated from WSU for: (1) unauthorized use of her procurement card; (2) causing improper charges on her procurement card; (3) misrepresenting the nature of purchases on the procurement card; and (4) allowing an unauthorized person to use her procurement card. She was terminated from UNS because she was no longer a WSU faculty member. After her termination from UNS,

she asked Dr. Guthikonda for voluntary faculty status.

In contrast, Drs. Diaz, Fessler, Michaels, and Johnson were not terminated from WSU nor were they members or employees of UNS. In addition, none of them asked Dr. Guthikonda for voluntary faculty status; they chose to assume that status.

Dr. Zamorano's argument that Dr. Guthikonda treated her different than Dr. Michael Higgins, a Neurosurgeon, because Dr. Guthikonda did not hire her as a contract employee fails for the same reason. Dr. Higgins was employed by UNS on a contract basis in either 2004 or 2005. Dr. Higgins was neither a former WSU faculty member who was terminated nor a member or employee of UNS, so his employment is not "nearly identical" to Dr. Zamorano's employment "in all relevant aspects."

Because Dr. Zamorano cannot establish a prima facie case of sexual discrimination under the Elliot Larsen Civil Rights Act, the Court need not address whether Defendants have a "legitimate, nondiscriminatory reason" for her termination, or whether Dr. Zamorano can show Defendants' proffered reasons were a pretext for discrimination. See *Lytle*, 458 Mich. at 173-74.

### B. Breach of Fiduciary Duty Claim Against Dr. Guthikonda (Count VI)

Dr. Zamorano says Dr. Guthikonda violated MCLA §450.1489(1) by failing to: (1) conduct regular meetings to update the shareholders on UNS's financial status (Dr. Zamorano believes Dr. Guthikonda retained UNS's financial benefits for himself); and (2) give her notice of the June 10, 2005 Board of Directors' meeting (her membership and employment with UNS was terminated after the June 10th meeting).

#### 1. Standing to Bring a Breach of Fiduciary Duty Claim

Dr. Guthikonda cites *Lozowski v. Benedict*, 2006 WL 287406 (Mich.App. Feb. 7,

2006) for the proposition that Dr. Zamorano does not have standing to bring a breach of fiduciary duty claim.

The general rule is that a lawsuit to enforce corporate rights or to redress injury to a corporation must be brought in the name of the corporation, not in the name of a stockholder or employee. *Lozowski*, 2006 WL 287406 at *2 (quoting *Belle Isle Grill Corp. v. Detroit*, 256 Mich.App. 463, 474 (2003)). A stockholder or employee may, however, individually sue corporate directors and officers if she sustained a loss separate and distinct from other stockholders, or if she can show a violation of a duty owed directly to her that is independent of the corporation. *Lozowski*, 2006 WL 287406 at *2 (quoting *Christner v. Anderson, Nietzke & Co, PC*, 433 Mich. 1, 9 (1989); *Belle Isle Corp. v. Detroit*, 256 Mich.App. 463 (2003)). The second exception is limited to cases in which the harm done amounts to a breach of duty owed to the individual personally, not to the corporation and the individual. *Lozowski*, 2006 WL 287406 at *2 (quoting *Michigan Nat'l Bank v. Mudgett*, 178 Mich.App. 677, 679 (1989)).

Dr. Zamorano cites *Estes v. Idea Eng'g & Fabrications, Inc.*, 250 Mich.App. 270 (2002) in support of her argument that she has standing to sue. The *Estes* court held that minority shareholders in closely-held corporations clearly have a direct cause of action against "controlling" members under MCLA §450.1489. *Estes*, 250 Mich.App. at 278.

### 2. Dr. Guthikonda's Retention of Financial Benefits

Even assuming Dr. Zamorano has standing to claim Dr. Guthikonda interfered with UNS by retaining financial benefits, her claim is mere speculation. Dr. Zamorano does not "set forth specific facts showing that there is a genuine issue for trial." *See*

10

Fed. R. Civ. P. 56(e).

### 3. Dr. Guthikonda's Failure to Give Dr. Zamorano Notice of the Meeting

Dr. Zamorano has standing to bring her claim that Dr. Guthikonda failed to give her notice of the June 10th meeting. This claim falls under an exception in *Lozowski*; Dr. Zamorano sustained a loss separate and distinct from other stockholders when her employment and membership were terminated.

MCLA §450.1489(1) says, "A shareholder may bring an action . . . to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or wilfully unfair and oppressive to the corporation or to the shareholder." "Willfully unfair and oppressive conduct" means:

> a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment . . . to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder.

MCLA §450.1489(3).

Shareholder's rights typically include voting at meetings, electing directors, adopting by-laws, amending charters, examining the corporate books, and receiving corporate dividends. *Franchino v. Franchino*, 263 Mich.App. 172, 184 (2004) (citing 12 Fletcher Cyclopedia Corporations ch 58, §5717, p. 22). "Under the [Michigan Business Corporation Act], the principal rights of shareholders . . . 'are to have a certificate of stock in proper form, to attend and vote at corporate meetings, and to take part in the election of directors.'" *Wojcik v. McNish*, 2006 WL 2061499 at *4 (Mich.App. July 25, 2006) (quoting 9 MLP Corporations, §191).

11

A genuine issue of material fact exists concerning Dr. Guthikonda's failure to give Dr. Zamorano notice of the June 10th meeting, and whether this failure amounts to substantial interference with Dr. Zamorano's right as a shareholder to attend and vote at meetings.

### C. Intentional Infliction of Emotional Distress Claim Against Dr. Guthikonda (Count VIII)

Dr. Zamorano did not respond to Defendants' motion to dismiss her intentional infliction of emotional distress claim against Dr. Guthikonda.  However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  The moving party always bears the initial burden to demonstrate the absence of a genuine issue of material fact, even if the opposite party fails to respond.  *Id.* at 454-55.  "The court is required, at a minimum, to examine the [Defendants'] motion for summary judgment to ensure that [they have] discharged that burden."  *Id.* at 455.

To succeed on her claim for intentional infliction of emotional distress, Dr. Zamorano must prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985).  Liability has only been found:

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 602-03 (quoting Restatement (Second) of Torts §46, comment d, p. 72-73). Further, "[t]he law intervenes only where the distress inflicted is so severe that no

12

reasonable man could be expected to endure it." *Id.* at 608-09 (quoting Restatement (Second) of Torts §46, comment j, p.77).

Defendants cite case law to support their position that Dr. Zamorano's termination from UNS did not constitute extreme and outrageous conduct.

In addition, Defendants argue that Dr. Guthikonda's conduct did not cause Dr. Zamorano severe emotional distress because she: (1) only saw a cardiologist due to heart problems in her family; (2) passed her stress test; (3) only visits doctors for normal medical check-ups; (4) has not seen a psychologist or psychiatrist for counseling since 2000; and (5) only has anger against Dr. Guthikonda.

Defendants meet their burden to demonstrate the absence of a genuine issue of material fact.

**V. CONCLUSION**

Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. Dr. Zamorano **VOLUNTARILY DISMISSES** count III, tortious interference with a business expectancy and opportunity and count V, violation of the Elliot Larsen Civil Rights Act - Hostile Working Environment.

Dr. Zamorano's claims against: (1) Dr. Guthikonda and UNS for violation of the Elliot Larsen Civil Rights Act - Sexual Discrimination (count IV); and (2) Dr. Guthikonda for intentional infliction of emotional distress (count VIII) are **DISMISSED**.

Dr. Zamorano's claim that Dr. Guthikonda breached his fiduciary duty by retaining UNS's financial benefits (count VI) is **DISMISSED**. Dr. Zamorano's claim that Dr. Guthikonda breached his fiduciary duty by failing to give her notice of the June 10, 2005 meeting (also count VI) proceeds to trial.

**IT IS ORDERED**.

                                              s/Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated:  January 30, 2009

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 30, 2009.
>
> s/Linda Vertriest
> Deputy Clerk